No. 50,047

GERALD R. TEMMEN, *Appellant,* v. KENT-BROWN CHEVROLET COMPANY, *Appellee.*

(605 P.2d 95)

Opinion filed January 19, 1980.

*Fred W. Phelps, Jr.,* of Fred W. Phelps - Chartered, of Topeka, argued the cause and was on the brief for the appellant.

*Robert D. Hecht,* of Scott, Quinlan & Hecht, of Topeka, argued the cause and *George A. Scott* and *Robert E. Keeshan,* of the same firm, were with him on the brief for the appellee.

*Dan L. Wulz,* of Topeka, was on the brief *amicus curiae* for Kansas Trial Lawyers Association.

*Stewart L. Entz,* of Colmery, McClure, Funk, Letourneau & Entz, of Topeka, was on the brief *amicus curiae* for Hudson Oil Company, Inc.

The opinion of the court was delivered by

HERD, J.: This is an action for compensatory and punitive damages arising out of the deduction of wages by defendant Kent-Brown Chevrolet from the check of its employee, plaintiff Gerald R. Temmen. The wages, which were deducted without written authorization required pursuant to K.S.A. 44-319(*a*)(3), were withheld to cover the cost of repairing plaintiff's car.

This action was originally begun in September, 1973. The trial ended in a summary judgment, which was appealed to this court. *Temmen v. Kent-Brown Chevrolet Co.,* 217 Kan. 223, 535 P.2d 873 (1975). A second action was filed, a mistrial declared and a jury trial completed.

The facts, as disclosed by a voluminous record, reveal the following: In April, 1969, Charles Frisbie purchased a new 1969 Chevrolet Camaro from Van-T Chevrolet Co. The manufacturer's new car warranty was issued to Frisbie at the time of purchase by the delivery of a Protect-O-Plate card in his name. To obtain repairs under warranty, the card is presented to an authorized dealer for imprinting on the work order. Frisbie traded the Camaro to Kent-Brown Chevrolet Co., Van-T's successor, in July, 1972. Thereafter, in August, 1972, Gerald R. Temmen and his father, Joseph R. Temmen, purchased the car from Kent-Brown. Both plaintiff Gerald Temmen and his father were employees of Kent-Brown. Gerald worked as a body fender repairman and his father was employed as a salesman. At the time of purchase, the Camaro had been driven about 24,000 miles and was under the balance of a 50,000 mile warranty covering certain specified parts.

Both Gerald and his father were given instructions on how to obtain the benefits of the unexpired warranty covering the car. A second purchaser of the car is required to apply to his dealer for a Protect-O-Plate within thirty (30) days or 1,000 miles following purchase and pay a $25.00 fee to the dealer. Neither plaintiff nor his father complied with the warranty requirements. Instead, plaintiff obtained the Protect-O-Plate of the previous owner, Frisbie, and used it to replace the water pump at no cost to him on December 8, 1972. There was evidence this practice had occurred on other occasions.

The crucial date to this lawsuit is July 16, 1973, when plaintiff again brought the Camaro to Kent-Brown's shop for repair work

to the rear wheel bearings. The vehicle had 42,000 miles on it at the time and the Protect-O-Plate had not been transferred. Plaintiff inquired if the warranty applied to such a problem and was assured by two employees that it was covered. The work order was prepared with the notation "under warranty." The repair work was ordered after a conversation with Larry Shuckman, service manager, who observed that the Frisbie Protect-O-Plate had never been transferred. Shuckman told plaintiff the vehicle was no longer under warranty because the time and mileage for transfer had passed. Shuckman marked through the "under warranty" notation on the work order and wrote "no warranty." The car was repaired at a cost of $112.85. After plaintiff took possession of the car without paying the bill, Shuckman wrote on the work order "take out of next week's check." Shuckman contends the action was authorized. Plaintiff denies he gave permission for the withdrawal. The evidence is undisputed there was no written authorization to deduct the amount from plaintiff's paycheck.

Temmen's petition fails to articulate a precise theory but adopts a scattergun-type pleading, apparently hoping to hit some target without taking specific aim.

The petition alleges:

"[T]hat on or about August 1, 1973, plaintiff delivered his 1969 model Camaro automobile, which was at that time under full factory warranty (having only 42,000 miles thereon), to the defendant Kent-Brown for necessary repairs to the rear end thereof; that defendant Kent-Brown was advised by plaintiff at that time that unless said repairs would be made by said defendant under and pursuant to the terms of the said factory warranty, plaintiff would not leave his said vehicle with said defendant for the making of said repairs; that plaintiff was advised at that time by said defendant that said repairs would be made at no cost to him, all pursuant to and in accordance with said factory warranty; that a fiduciary relationship existed between plaintiff and defendant Kent-Brown; that defendant Kent-Brown had in its possession funds due to plaintiff at said time and thereafter; that plaintiff relied upon said representations of said defendant relative to said repairs being made under warranty and at no cost to him; and in reliance upon said representations he did leave his said 1969 Camaro vehicle with said defendant for the installation of new bearings in the rear end and other work thereon to be performed under and pursuant to said factory warranty; that said representations were in fact false and known by said defendant at said time to be false, and were made to this plaintiff for the purpose of inducing this plaintiff to rely upon said representations and in reliance thereon to act thereon; that when said repairs were duly completed by said defendant the said vehicle was returned to plaintiff without a further word; that approximately two weeks later when plaintiff received his payroll check for work and services regularly done and performed on the behalf of said defendant in the course of his regular employment, approxi-

mately $112.00 was deducted therefrom; that when plaintiff inquired as to the reason for said deduction, plaintiff was advised that said deduction was made from his wages as and for payment to said defendant for said repairs upon said vehicle, all in outrageous and oppressive and fraudulent violation of the said agreement between this plaintiff and said defendant relative to said repairs.

III.

"That in the doing of these things, all as aforesaid, these defendants have conducted themselves in bad faith toward one who was in a fiduciary relationship with them; and further, defendants, being under the circumstances herein in a vastly superior bargaining position *vis-a-vis*, plaintiff, have been guilty of over-reaching and oppression; further, defendants herein have committed the tort of fraudulent misrepresentation toward and to plaintiff; and further, defendants, in the doing of these things, have made out the separate tort of outrage."

No pretrial order was filed although the record indicates a rather informal pretrial conference was held. In response to a pretrial questionnaire, plaintiff alleged:

"5. Theory of your claim, if any: A fiduciary relationship existed between plaintiff and defendant Kent-Brown. Defendant had in its possession funds due to plaintiff. Plaintiff relied upon representations made by defendant relative to repairs being made under warranty and at no cost to plaintiff. The representations were false and were made to induce the plaintiff to rely upon them. Defendant committed the torts of fraudulent misrepresentation and of outrage. Plaintiff has suffered indignity, embarrassment, inconvenience, mental and emotional pain and distress. The elements of fraud, oppression, over reaching, bad faith, outrage and unjust enrichment are involved."

Plaintiff requested a verdict of $10,112.85 compensatory damages and $100,000.00 punitive damages.

On the theory, inarticulate as it is, of the petition and pretrial questionnaire the case went to trial January 17, 1978. During plaintiff's case in chief, the trial court was asked to take judicial notice of K.S.A. 44-319, which became effective July 1, 1973, fifteen days before the repair work was ordered to be done on plaintiff's car. At the end of plaintiff's case, the defendant moved for a directed verdict and the trial court made its order as follows:

"The Court did sustain the motion concerning the count of outrage, and the record shows the reason why the Court sustained that motion.

"On the matter of fraud, the record also shows the concerns this Court had concerning the elements under P.I.K. And the Court made some references to the elements as to whether there was sufficient evidence to enable it to go to the jury on the theory of fraud. The Court is satisfied that the elements of fraud have not been proven in this case."

After directing a verdict for the defendant on the theories of fraud and outrage, the trial court permitted plaintiff to amend his

pleadings by substituting conversion for fraud and outrage. The court directed a verdict against the defendant for $112.85 as compensatory damages for converting the amount of the repair bill from plaintiff's check and submitted the question of punitive damages to the jury. The jury awarded plaintiff a verdict in the amount of $20,000.00, which the trial court set aside for lack of evidence on defendant's motion for judgment notwithstanding the verdict. Plaintiff appealed to the Court of Appeals, which found sufficient evidence to support a punitive damage award, but reduced the amount to $5,000.00. Plaintiff was given ten days to accept the remittitur. If he declined to accept the reduced amount the defendant was granted a new trial on the issue of punitive damages. Plaintiff petitioned this court for review of the Court of Appeals decision.

Before discussing the main issues on appeal, we must resolve a procedural matter raised by the Court of Appeals opinion. In that opinion, the court states:

"The propriety of recovery of actual damages for conversion founded upon violation of K.S.A. 44-319 is not before us. That such an action lies has become the law of this case since defendant has not appealed the point."

We disagree with the Court of Appeals assessment of this issue. At trial, defense counsel vigorously objected on the basis of "surprise" to the action of the trial court in allowing plaintiff to amend his pleadings to state a claim based upon conversion. In its brief to the Court of Appeals, defendant alleged the trial court erred in allowing the conversion theory based upon a violation of K.S.A. 44-319($a$)(3). In addition, defendant specifically argued punitive damages were not justified under the above mentioned theory. Although defendant did not specifically argue the actual damage issue, we find the question was adequately covered by the objection at trial and the argument contained in defendant's brief.

Turning now to the main points on appeal, we find there are two troublesome questions in this case. The first is the action of the trial court in permitting plaintiff, after resting his case, to amend his pleadings pursuant to K.S.A. 60-215($b$) to state a claim for relief for conversion. There can be no argument a trial court has wide discretion in allowing amendments to pleadings to permit them to conform to the evidence. *Hass v. Preferred Risk Mutual Ins. Co.*, 214 Kan. 747, 522 P.2d 438 (1974); *Ballhorst v.*

*Hahner-Foreman-Cale, Inc.,* 207 Kan. 89, 484 P.2d 38 (1971). In this case, however, the amendment to the pleadings does not conform to the evidence presented at trial. The evidence shows Kent-Brown withheld $112.85 from its employee's wages without written authority. That action does not constitute the tort of conversion.

It has been uniformly held that conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another. *Desbien v. Penokee Farmers Union Cooperative Association,* 220 Kan. 358, 552 P.2d 917 (1976); *Nelson v. Hy-Grade Construction & Materials, Inc.,* 215 Kan. 631, 527 P.2d 1059 (1974); *Watkins v. Layton,* 182 Kan. 702, 324 P.2d 130 (1958). We note also that:

"An action will not lie for conversion of a mere debt or chose in action. Hence, where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor." 18 Am. Jur. 2d, Conversion § 10.

See *Baker, Administrator v. Brial,* 185 Kan. 322, 341 P.2d 987 (1959); *Free v. Elberson et al.,* 157 Mont. 424, 486 P.2d 857 (1971); 89 C.J.S., Trover & Conversion § 23; Prosser, Cases and Materials on Torts, pp. 95-96 (6th ed. 1976).

An employer's withholding of an employee's wages without written authorization pursuant to K.S.A. 44-319(*a*)(3) constitutes a breach of the employment contract. The defendant is liable for damages for that breach and could be charged with a class C misdemeanor, pursuant to K.S.A. 44-323. With respect to the existence of a private remedy by the employee for a violation of K.S.A. 44-319(*a*)(3), we note counsel for *amicus* points out a statement in *Head v. Knopp,* 225 Kan. 45, 46, 587 P.2d 867 (1978), wherein we stated: "K.S.A. 44-319 does not provide a basis for a cause of action . . . ." *Amicus* suggests that statement establishes actual damages are not recoverable for a violation of K.S.A. 44-319(*a*)(3). We hold the above mentioned statement is dicta and was not a part of the issue before the court in *Head v. Knopp.* We find a remedy does exist for an employee whose wages are improperly withheld.

The trial court's action in permitting plaintiff to amend his pleading to allege conversion was improper in this case because the amendment did not conform to the evidence and was therefore impermissible under K.S.A. 60-215(*b*). The only permissible

amendment would have been to allege breach of contract and the resulting damages.

The second issue in this case deals with the recovery of punitive damages for a breach of this kind. We have long adhered to the rule that damages for breach of contract are limited to pecuniary losses sustained, and exemplary or punitive damages are not recoverable in the absence of an independent tort. *Dold v. Sherow,* 220 Kan. 350, 355, 552 P.2d 945 (1976). Proper allegations of fraud, malice, gross negligence, oppression or wanton disregard of plaintiff's rights are needed in order to recover punitive damages. For an excellent discussion of the law of punitive damages see *Cantrell v. R. D. Werner Co.,* 226 Kan. 681, 602 P.2d 1326 (1979). It would be wise to note with respect to the recovery of punitive and compensatory damages for an injury as a result of an act which is also punishable under a criminal statute, we adhere to the following:

"While it has been stated that the violation of a criminal law, which results in any actual damage to a person, is a sufficient foundation for punitive damages, in general the fact that an act for which a recovery of damages is sought is punishable criminally will not alone authorize a recovery of exemplary damages, nor, according to the more generally accepted rule, will such fact bar a recovery of such damages." 25 C.J.S., Damages § 122.

See also *Chasteen v. Childers,* 218 Kan. 519, 528, 546 P.2d 935 (1976).

Turning to the facts in the present case, we find they do not warrant the recovery of punitive damages. The trial court found there was insufficient evidence to support the claims of fraud and outrage. Specifically, with respect to the claim of fraud, the trial court found there was no evidence Kent-Brown tried to deceive plaintiff. The record indicates at the time the work order was originally prepared, all of the parties believed the work would be done under warranty. We note also that the statute in question, K.S.A. 44-319, had been in effect only fifteen days prior to the date the repair order was made on the car. There is no question Kent-Brown's action was contrary to the law; however, viewing the record in its entirety, we do not find facts indicating fraud, malice or wanton behavior on the part of defendant. The absence of such acts constituting an independent tort bars the recovery of punitive damages.

We affirm the result reached by the trial court and remand with directions to amend plaintiff's pleadings to allege breach of

contract and to direct a verdict to him for $112.85. The trial court costs are assessed against the defendant and the costs of the appeal assessed against the plaintiff.

FROMME, J., not participating.