(796 P.2d 1060)
No. 63,791 ■

WARREN BROWN GILLESPIE and POLLY GILLESPIE TOWNSEND, *Plaintiffs/Appellants*, v. DOROTHEA WOFFORD SEYMOUR, as Co-trustee of the Brown-Gillespie Trust Estate, *et al.*, *Defendants*, and ROBERT W. BURDGE and GRANT-THORNTON, An Accounting Partnership, *Defendants/Appellees.*

Opinion filed May 4, 1990.

*Jerry D. Bogle* and *Patrick C. Blanchard*, of Young, Bogle, McCausland, Wells & Clark, P.A., of Wichita, for appellants.

*Stanley J. Parzen, Theodore A. Livingston*, and *Elizabeth M. Streit*, of Mayer, Brown & Platt, of Chicago, Illinois, and *John T. Conlee* and *Ron Campbell*, of Fleeson, Gooing, Coulson & Kitch, of Wichita, for appellees.

Before ABBOTT, C.J., BRAZIL and RULON, JJ.

*Per Curiam*: Warren Brown Gillespie and Polly Gillespie Townsend (Beneficiaries) appeal from a district court order granting Robert W. Burdge's and Grant-Thornton's (Accountants) motion to dismiss pursuant to K.S.A. 60-212(b)(6). The court concluded K.S.A. 1989 Supp. 1-402 and the common law embodied in the Kansas cases requires dismissal of the Beneficiaries' claims against the Accountants. We affirm the district court in dismissing all stated causes of action against the Accountants; but we find that the allegations, if taken as true for purposes of the motion to

dismiss, and drawing all inferences favorably to Beneficiaries, support a cause of action for breach of trust. We affirm in part, reverse in part, and remand.

This case arises out of a trust formed April 20, 1956, by Warren E. Brown in which he and his two daughters, Dorothea Brown Wofford and Pauline Brown Gillespie, were the original trustees. The trust indenture provided that, upon the death of Warren E. Brown, the two remaining trustees would continue as the sole trustees; and, upon the death of Dorothea Brown Wofford, her daughter, Dorothea Wofford Seymour, would become a co-trustee with Pauline Brown Gillespie. The trust became irrevocable upon Warren Brown's death in 1956. The trust was to terminate upon the deaths of Warren E. Brown and Pauline Brown Gillespie, with the entire trust to be distributed to the children of Pauline Brown Gillespie.

After the death of Dorothea Brown Wofford in 1974, Dorothea Wofford Seymour and Pauline Brown Gillespie served as trustees. In 1988, Pauline Brown Gillespie died and was survived by her two children, the Beneficiaries, who received the trust assets.

The Beneficiaries filed suit against Dorothea Wofford Seymour and numerous other defendants, including Robert Burdge and Grant-Thornton, the accountant and accounting firm which did tax and accounting work for the trust. The Beneficiaries alleged that, after Dorothea Wofford Seymour became a trustee, trust assets were invested in exploration, development, and drilling of oil and gas ventures headed by Arrowhead Petroleum, Inc., and Big Springs Drilling, Inc. Both companies are controlled by Dorothea Wofford Seymour, her husband, and her son. The Beneficiaries generally alleged that the trust was being charged amounts in excess of the services performed by Arrowhead Petroleum, Big Springs Drilling, and the Accountants; while at the same time the trust suffered losses. The Beneficiaries specifically alleged four causes of action against the Accountants: (1) negligence, malpractice, and breach of fiduciary duty, (2) breach of contract, (3) conversion and conspiracy, and (4) fraud and conspiracy.

The Accountants filed a motion to dismiss pursuant to K.S.A. 60-212(b)(6). The trial court granted the motion, finding that pursuant to K.S.A. 1989 Supp. 1-402 and Kansas case law the claims

for relief against the Accountants should be dismissed. The trial court then ruled pursuant to K.S.A. 1989 Supp. 60-254(b) that the ruling adjudicates fewer than all the claims or the liability of fewer than all the parties and there was no just reason to delay entry of judgment for the Accountants on all counts. The Beneficiaries appealed.

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff's allegations should be taken as true and all inferences should be drawn favorably to the plaintiff. *Ling v. Jan's Liquors*, 237 Kan. 629, 630, 703 P.2d 731 (1985).

The facts stated in the Beneficiaries' petition, which are relevant to the claims against the Accountants, are as follows: Since 1974, the trust corpus has been investing in various oil and gas ventures promoted and developed by Arrowhead Petroleum, Inc., and Big Springs Drilling, Inc. Both are companies in which one of the trustees or a member of the trustee's immediate family has an interest. Grant-Thornton has performed accounting and tax services for the trust, Arrowhead Petroleum, and Big Springs Drilling. Burdge performed accounting and tax services for the trust and for the two companies until 1985, when he became an employee of Big Springs Drilling and a consultant of Arrowhead Petroleum. Since 1974, the trust has lost in excess of $10,000. We must determine whether these facts, when viewed in the light most favorable to the Beneficiaries, state any valid claim for relief.

In dismissing the action against the Accountants, the trial court relied in part on K.S.A. 1989 Supp. 1-402, which provides:

"No person, proprietorship, partnership, professional corporation or association authorized to practice as a certified public accountant pursuant to article 3 of chapter 1 of the Kansas Statutes Annotated, or any employee, agent, partner, officer, shareholder or member thereof, shall be liable to any person or entity for civil damages resulting from acts, omissions, decisions or other conduct amounting to negligence in the rendition of professional accounting services unless:

"(a) The plaintiff directly engaged such person, proprietorship, partnership, corporation or association to perform the professional accounting services; or

"(b)(1) the defendant knew at the time of the engagement or the defendant and the client mutually agreed after the time of the engagement that the

professional accounting services rendered the client would be made available to the plaintiff, who was identified in writing to the defendant; and (2) the defendant knew that the plaintiff intended to rely upon the professional accounting services rendered the client in connection with specified transactions described in writing."

K.S.A. 1989 Supp. 1-403 instructs that the act is not intended to modify existing common-law rules of liability except as stated in the statute.

The Beneficiaries, in their pleadings, fail to allege that they directly engaged the Accountants, that the Accountants knew at the time they performed their services the accounting would be made available to the Beneficiaries, or that they later agreed that the accounting would be given to the Beneficiaries. Further, the pleadings do not allege that the Beneficiaries were identified in writing, that the Accountants knew that the Beneficiaries intended to rely on the accountings, or even that the Beneficiaries did in fact see and rely on the accountings.

Considering the Beneficiaries' allegations as true and drawing all inferences favorably to the Beneficiaries, they are insufficient under K.S.A. 1989 Supp. 1-402 to state a claim of relief based on negligence of the Accountants.

The Beneficiaries argue that the Accountants are liable for breach of fiduciary duty. In *Paul v. Smith*, 191 Kan. 163, 169-70, 380 P.2d 421 (1963), the court discussed the establishment of a fiduciary relationship as follows:

"It has been recognized that a fiduciary relationship between parties does not depend upon some technical relation created by, or defined in, law. It exists in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard for the interests of the one reposing the confidence. [Citations omitted.]

"Fiduciary relationships recognized and enforceable in equity do not depend upon nomenclature; nor are they necessarily the product of any particular legal relationship. [Citations omitted.] They may arise out of conduct of the parties evidencing an agreement to engage in a joint enterprise for the mutual benefit of the parties. [Citations omitted.] But they necessarily spring from an attitude of trust and confidence and are based upon some form of agreement, either expressed or implied, from which it can be said the minds have met in a manner to create mutual obligations. [Citations omitted.]

"For the plainest of reasons, agreements establishing fiduciary relationships, if not in writing, must be clear and convincing. Because of the

acuteness of the equitable remedies, courts will not reach out to establish legal relationships from which enforceable equitable rights may flow. A confidential relationship is never presumed, and the burden of proof is upon the party asserting it. [Citation omitted.]

"Mere concert of action, without more, does not establish a fiduciary relationship. [Citations omitted.] Undoubtedly, parties may deal at arm's length for their mutual profit. It is only when, by their concerted action, they willingly and knowingly act for one another in a manner to impose mutual trust and confidence that a fiduciary relationship arises."

A fiduciary relationship requires confidence of one in another and a certain inequity or dependence arising from weakness of age, mental strength, business intelligence, knowledge of facts involved, or other conditions which give one an advantage over the other. *Olson v. Harshman,* 233 Kan. 1055, Syl. ¶ 5, 668 P.2d 147 (1983).

The issue of whether an accountant employed by a company and a purchaser of the company's stock formed a fiduciary relationship was discussed in *Shofstall v. Allied Van Lines, Inc.,* 455 F. Supp. 351 (N.D. Ill. 1978). In *Shofstall,* the plaintiff purchased Allied stock without the knowledge that the Interstate Commerce Commission (ICC) had placed a restriction against the payment of dividends on the stock. The plaintiff alleged that Price Waterhouse, the accounting firm employed by Allied, breached its "fiduciary duty" to plaintiff by failing to disclose the ICC restriction on Allied stock. The court noted that the plaintiff had the burden of proving the existence of a fiduciary relationship and had failed to allege any facts which could lead to the inference that a fiduciary relationship existed between himself and Price Waterhouse. The court granted Price Waterhouse's motion for summary judgment, finding the accounting firm did not owe the plaintiff a duty to disclose information regarding Allied's policy against dividends. 455 F. Supp. at 359-60.

In *Franklin Supply Company v. Tolman,* 454 F.2d 1059 (9th Cir. 1972), Franklin Supply Co. (Franklin) and Servicios Hydrocarb C.A. (Servicios) entered into an agreement in which Franklin purchased all of the capital stock of Petroleum Industry Consultants, C.A. (Peticon), which was a wholly-owned subsidiary of Servicios. Franklin and Servicios employed Peat, Marwick, Mitchell & Co. (PMM) to perform an audit of Peticon. Franklin later filed suit against PMM alleging that PMM failed to perform an

independent audit because an employee of PMM was also an alternate director of Servicios and had been a director of Peticon. Franklin charged PMM of violating the fiduciary relationship between Franklin and PMM. Finding that no fiduciary relationship was formed between Franklin and PMM, the court stated:

"A 'fiduciary relation' is an elusive status to define. More often a fiduciary is a person who holds property or things of value for another—a trustee, executor, receiver, conservator or someone who acts in a representative capacity for another in dealing with the property of the other. Here, PMM was acting more in the capacity of arbitrator or fact finder not for one but for two persons. The duty of PMM was not to act as a fiduciary for Franklin; it was, rather, to act independently, objectively and impartially, and with the skills which it represented to its clients that it possessed, to make accurate determinations of fact. It would be liable for acting negligently or fraudulently.

"We do not say that a certified public accountant may never be a fiduciary. We do say it was not here." 454 F.2d at 1065.

For a more recent case with a similar result, see *Painters of Phil. D. Coun. v. Price Waterhouse*, 879 F.2d 1146 (3rd Cir. 1989) (An independent public accountant performing a standard audit is not a fiduciary as defined by the Employee Retirement Income Security Act [ERISA].). ERISA defines a fiduciary as a person with discretionary authority or discretionary responsibility in the administration of a plan. 879 F.2d at 1149.

Here, the Beneficiaries have failed to allege any facts to establish a fiduciary relationship existed between themselves and the Accountants. There are no facts which illustrate the Beneficiaries formed an agreement with the Accountants or that an inequitable relationship existed between the Beneficiaries and the Accountants. The previously cited cases support the conclusion that a fiduciary relationship was not formed, rather, the Accountants were employed to perform independent accounting work for the trust. The Beneficiaries failed to state a claim for breach of fiduciary duty.

The Beneficiaries argue that the Accountants entered into a contract of employment with the trust to perform accounting services; that the Accountants breached their contract; and that the Beneficiaries, as third-party beneficiaries of the contract, may bring an action for breach of contract against the Accountants. Third-party beneficiaries to a contract were discussed in *Noller*

*v. General Motors Corp.*, 244 Kan. 612, 772 P.2d 271 (1989). The court instructed that the intent to benefit a third party must be clearly expressed in a contract, as otherwise contracting parties are presumed to act for themselves. 244 Kan. at 617. Third-party beneficiaries may be divided into two classes: intended beneficiaries and incidental beneficiaries. Beneficiaries expressly designated by a contract are intended beneficiaries and may sue to enforce a contract. Protection is not provided for incidental beneficiaries. 244 Kan. at 618.

Here, the Beneficiaries fail to show they were intended third-party beneficiaries under the accounting contracts between the Accountants and the trust. In addition, the Beneficiaries fail to set forth any terms of the contracts or to show that the failure of the Accountants to tell them about the investments of the trust constituted a breach of contract. Accordingly, the Beneficiaries have failed to state a claim for breach of contract.

The Beneficiaries argue that, because the trustees failed to perform their duties, the Beneficiaries may step into the shoes of the trustees and bring suit against the Accountants for professional negligence. The cases cited by the Beneficiaries do not speak in terms of a beneficiary "stepping into the shoes" of the trustee. Those cases, however, do support the argument that, in a proper case, a beneficiary may have a cause of action against a trustee and/or a third party for breach of trust.

The rights of beneficiaries in such cases are discussed in Bogert, Trusts and Trustees § 901 (2d ed. 1982), as follows:

"Just as every owner of a legal interest has the right that others shall not, without lawful excuse, interfere with his possession or enjoyment of the property or adversely affect its value, so the beneficiary, as equitable owner of the trust res has the right that third persons shall not knowingly join with the trustee in a breach of trust.

"The civil liability of such a participant is stated in some codes as follows: 'All persons aiding and assisting trustees of any character, with a knowledge of their misconduct, in misapplying assets, are directly accountable to the persons injured.' Criminal liability of the third person may also be imposed.

"The principle applies to those who assist *any fiduciary* in the breach of his obligation, for example, executors and administrators, guardians, agents, and corporate officials.

"The wrong of participation in a breach of trust is divided into two elements: (1) an act or omission which furthers or completes the breach of

trust by the trustee, and (2) knowledge at the time that the transaction amounted to a breach of trust, or the legal equivalent of such knowledge.

"Mere knowledge by a third person that a breach of trust is in process, coupled with a failure to notify the beneficiary or to interfere with the action of the trustee, does not amount to a participation in a breach. Such conduct is inaction which may be reprehensible under the highest standards of ethics, but no legal duty has been violated. On the other hand, if the third party by any act whatsoever assists the trustee in wrongfully transferring the benefits of the trust property to the trustee, another person, or the alleged participant, or aids in destroying or injuring that property, there has been conduct upon which liability can be predicated, if the requisite state of mind existed in the defendant.

"In order that the third party be liable as a participant, it is not necessary to show that he benefited as a result of the transaction.

"The performance of acts by an employee of the trustee, in carrying out the trustee's orders, although they may further the breach of trust, do not necessarily make the employee a participant in the breach, but officers and directors of a corporate trustee who act for the corporation in committing a breach of trust may well be personally liable."

The cases cited by the Beneficiaries instruct that a beneficiary may sue a third party for breach of trust. In *Ehret v. Ichioka*, 247 Cal. App. 2d 637, 55 Cal. Rptr. 869 (1967), the beneficiaries of a trust brought an action for breach of trust against the trustee and a third person to which trust property was transferred. The court stated: "[W]here the trustee acts in breach of trust, as by transferring property to a third person without consideration, the beneficiary's right of action against either the trustee or transferee is well established. Further, if the trustee fails or refuses to act, the beneficiary can sue the third party." 247 Cal. App. 2d at 645.

Similarly, in *Booth v. Security Mutual Life Insurance Company*, 155 F. Supp. 755 (D.N.J. 1957), three members of an international union brought a breach of trust action against the trustee of the trust fund of the union, an insurance company, and an insurance agent. The complaint alleged that money was taken from the trust fund and given to the insurance agent to pay for employee group insurance and that the insurance agent wrongfully retained over one-third of the money. The court, in finding the plaintiff had a right to sue the insurance company and agent for breach of trust, noted:

" 'The situation is different where the trustee in breach of trust transfers property to a third person. . . . The wrong which [the third person] commits is a wrong to the beneficiaries in taking or retaining the property after he has notice of the breach of trust, and he thereby incurs a liability to them, unless, indeed, he is a bona fide purchaser (not the case as to one who is alleged to have "assisted" in the breach of trust). In this situation, therefore, the beneficiaries can maintain a suit in equity against the transferee, if he took with notice of the breach of trust or paid no value . . . . Primarily the liability of the transferee is to the beneficiaries rather than to the trustee, and the right of the beneficiaries against the transferee is a direct right and not one which is derivative through the trustee.' " 155 F. Supp. at 761 (quoting 3 Scott on Trusts, § 294.1 [2d ed. 1956]).

Further support for finding that a beneficiary may bring a breach of trust cause of action against a third party can be found in *Blankenship v. Boyle*, 329 F. Supp. 1089 (D.D.C. 1971), in which beneficiaries to a mining workers' welfare fund sued the fund trustees and the bank handling the trust money for breach of trust. The court found the bank entered into transactions with the trustees with actual or constructive knowledge that the transactions were in breach of the trustee's fiduciary duty. The bank could be found liable for the resulting loss of income suffered by the beneficiaries due to the bank's knowing participation in the breach of trust. 329 F. Supp. at 1103-04.

The alleged breach by the trustee in these cases involved intentional acts as opposed to negligent acts in which the third parties knowingly participated.

To state a cause of action for breach of trust, just as with K.S.A. 1989 Supp. 1-402, the Beneficiaries must allege more than mere negligence by the Accountants.

The Beneficiaries allege that the Accountants conspired with the other defendants and participated in the conversion of trust funds by overcharging the trust for services rendered. "The elements of civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or cause of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Stoldt v. City of Toronto*, 234 Kan. 957, Syl. ¶ 5, 678 P.2d 153 (1984). "An action for civil conspiracy must be supported, as one of its elements, by one or more unlawful, overt acts which produce an unlawful result." 234 Kan. 957, Syl. ¶ 6. Conversion is defined

as the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights. *Moore v. State Bank of Burden,* 240 Kan. 382, 386, 729 P.2d 1205 (1986), *cert. denied* 482 U.S. 906 (1987). "An action for conversion will not lie for the recovery of an ordinary debt or account." *Temmen v. Kent-Brown Chev. Co.,* 227 Kan. 45, Syl. ¶ 3, 605 P.2d 95 (1980). To maintain an action for conversion, a plaintiff must have actual possession of the property or a right to immediately take possession of the property. An interest entitling a plaintiff to possession of the property at some time in the future is not sufficient to maintain an action for conversion. 18 Am. Jur. 2d, Conversion § 76, p. 199. In this case, the trust provided in part:

"No person entitled as beneficiary hereunder—either to the body or corpus of said property upon the termination of said trust or to the income, increase or increments thereof or therefrom during the continuance thereof—shall individually take or have any title to or interest in such body or corpus or income, increase or increments until the same shall be actually received in possession by any such beneficiary."

The Beneficiaries lack standing to maintain a conversion action because they possessed a future interest in the trust but had no right to immediate possession of the trust funds. The Beneficiaries have failed to state a claim for conversion. Likewise, because the Beneficiaries cannot maintain an action for conversion, they similarly cannot maintain an action for conspiracy to convert the trust funds.

The Benficiaries may, however, maintain an action for breach of trust against the Accountants for conspiracy to overcharge the trust account and participation in overcharging the account. As previously stated, when ruling on a motion to dismiss pursuant to K.S.A. 60-212(b)(6), the motion must be decided from the well-pleaded facts of a plaintiff's petition. The question to be decided is whether, in the light most favorable to a plaintiff, the petition states any valid claim for relief. *Woolums v. Simonsen,* 214 Kan. 722, Syl. ¶ 2, 522 P.2d 1321 (1974). Dismissal is justified only when the allegations of the petition clearly demonstrate a plaintiff does not have a claim for relief under any possible theory. *Dutoit v. Board of Johnson County Comm'rs,* 233 Kan. 995, 998, 667 P.2d 879 (1983). As stated above:

"Just as every owner of a legal interest has the right that others shall not, without lawful excuse, interfere with his possession or enjoyment of the property or adversely affect its value, so the beneficiary, as equitable owner of the trust res has the right that third persons shall not knowingly join with the trustee in a breach of trust.

. . . .

"[I]f the third party by any act whatsoever assists the trustee in wrongfully transferring the benefits of the trust property to the trustee, another person, or the alleged participant, . . . ." Bogert, Trusts and Trustees § 901.

Allegations that the Accountants knowingly joined the trustee and others in wrongfully obtaining trust funds in the form of over-charges, if true, would constitute a cause of action for breach of trust. The Beneficiaries' petition is sufficient under K.S.A. 60-208(a) to withstand a motion to dismiss based on a breach of trust theory. The trial court erred in dismissing the third cause of action in counts three and four against the Accountants for con-version and conspiracy because the allegations, taken as true, could support a cause of action for breach of trust. Whether this cause of action can withstand a motion for summary judgment at the conclusion of discovery is not for us to decide now.

The Beneficiaries argue that the Accountants committed fraud by failing to inform them that the trust funds were being misused when the Accountants had a duty to speak. "Actionable fraud may be based . . . upon a suppression of facts which the party is under a legal or equitable obligation to communicate and in respect of which he could not be innocently silent." *DuShane v. Union Nat'l Bank*, 223 Kan. 755, 759, 576 P.2d 674 (1978). An obligation to communicate arises from the relationship existing between the parties when the concealment is alleged to have occurred. If the parties are contracting, the relationship arises when there is a disparity of bargaining powers or expertise. The obligation also arises if the parties are in a fiduciary relationship. 223 Kan. at 760.

In *In Re Gas Reclamation, Inc. Securities Litigation*, 659 F. Supp. 493 (S.D.N.Y. 1987), purchasers of Gas Reclamation Units (Investors) from Gas Reclamation, Inc., (GRI) filed suit against Peat, Marwick, Mitchell & Co. (Peat Marwick) for common-law fraud, alleging Peat Marwick had an affirmative duty to disclose misstatements they discovered in GRI's financial statements and

on which Peat Marwick knew the Investors relied. The court held that Peat Marwick had no duty to disclose to the Investors fraudulent misconduct on the part of GRI and dismissed the claim of common-law fraud against Peat Marwick. 659 F. Supp. at 506. A similar result was reached in *Latigo Ventures v. Laventhol & Horwath*, 876 F.2d 1322, 1325 (7th Cir. 1989), in which the court held that the common law of Illinois does not require accountants to broadcast fraud by a corporate client to anyone who might buy the client's stock. The court said:

"It is not the law that whenever an accountant discovers that his client is in financial trouble he must blow the whistle on the client for the protection of investors—so that Laventhol & Horwath should have taken out an advertisement in the *Wall Street Journal* stating that it had just discovered that its client Xonics, Inc. was losing money, rather than waiting to report this in the next audit report. That would be an extreme theory of accountants' liability, and it is one we decline to embrace as an interpretation of the common law of Illinois, having in previous cases specifically rejected it as a possible theory of Rule 10b-5 aider and abettor liability. [Citations omitted.] There is no actionable nondisclosure without a duty to disclose, and in deciding whether there should be such a duty a court should attend to the practical consequences. Relations of trust and confidence between accountant and client would be destroyed if the accountant were duty-bound to make continuous public disclosure of all the client's financial adversities. And the costs of auditing would skyrocket to compensate the accounting profession for the enormous expansion in potential liability, not to mention the increase in the costs of publication." 876 F.2d at 1327.

Here, the Accountants did not have a legal obligation to communicate facts regarding the investment of the trust fund to the Beneficiaries. The parties did not enter into a contract or form a fiduciary relationship. The Beneficiaries fail to state a cause of action for fraud upon which relief can be granted.

The Beneficiaries argue the trial court erred by holding that K.S.A. 1989 Supp. 1-402 provides accountants protection from intentional torts and contracts. The Beneficiaries misconstrue the trial court's order. The court found that K.S.A. 1989 Supp. 1-402 and the common law applied to all of the Beneficiaries' claims. The court did not hold that K.S.A. 1989 Supp. 1-402 precludes an accountant from liability for intentional torts or breach of contract, but rather it erroneously held that all of the Beneficiaries' claims could be dismissed in accordance with the statute and common law.

The Beneficiaries argue K.S.A. 1989 Supp. 1-402 violates Section 18 of the Bill of Rights of the Kansas Constitution. The Beneficiaries failed to raise this issue before the trial court. "[W]here constitutional grounds for reversal are asserted for the first time on appeal, they are not properly before the appellate court for review." *In re Residency Application of Bybee*, 236 Kan. 443, 449, 691 P.2d 37 (1984). An exception to this rule exists when the constitutionality of a statute is at issue.

" 'The constitutionality of a statute should be considered in any action where it is necessary in order to determine the merits of the action or where the issues cannot be intelligently decided without doing so, notwithstanding the failure of the parties to raise the constitutional question, failure to plead the question, or failure to present the question to the trial court.' " *Van Sickle v. Shanahan*, 212 Kan. 426, 434, 511 P.2d 223 (1973).

Section 18 of the Kansas Bill of Rights provides that all persons shall have a remedy by due course of law. The legislature may modify remedies when required by public policy; however, when a common-law remedy is modified, an adequate substitute remedy for the right infringed or abolished must be provided. *Kansas Malpractice Victims Coalition v. Bell*, 243 Kan. 333, 350, 757 P.2d 251 (1988).

K.S.A. 1989 Supp. 1-402 provides an adequate substitute remedy for the common-law action of professional liability against an accountant. Under the common-law theory of professional negligence in most jurisdictions, an accountant must have actual knowledge that a certain class of persons will rely on the accounting before the accountant can be found liable. See *Badische Corp. v. Caylor*, 257 Ga. 131, 356 S.E.2d 198 (1987) (accountant may be liable for professional negligence to those persons or limited class of persons who the accountant is aware will rely on the information he prepared). *Inv. Co. v. C. & L.*, 70 Ohio St. 2d 154, 436 N.E.2d 212 (1982) (accountant may be held liable to third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen). K.S.A. 1989 1-402 simply codifies the common law governing an accountant's liability for professional negligence. The statute does not affect the rights of third-party beneficiaries or the rights of a trust beneficiary to bring an action for breach of trust against the trustee and a third

party. K.S.A. 1989 Supp. 1-402 does not violate Section 18 of the Kansas Bill of Rights.

Affirmed in part, reversed in part, and remanded for further proceedings.