The FIDELITY STATE BANK, GARDEN CITY, KANSAS, Plaintiff,

v.

W.A. BEDSWORTH, a/k/a Art Bedsworth, and Stotler and Company, Defendants.

Civ. A. No. 89–1146–T.

United States District Court, D. Kansas.

July 11, 1991.

J. Michael Kennalley, Hershberger, Patterson, Jones & Roth, Wichita, Kan., Charles E. Owen, II, Loyd & Owen, Garden City, Kan., for plaintiff.

Bruce Keplinger, Payne & Jones Chartered, Overland Park, Kan., Jeffrey M. Henderson, Chicago, Ill., for Stotler and Co.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the following motions filed by defendant Stotler and Company: (1) motion for leave to file instanter amended affirmative defenses (Doc. 56); (2) motion for leave to file instanter defendant's motion for summary judgment and defendant's memorandum in support of motion for summary judgment (Doc. 50); and (3) motion for summary judgment (Doc. 51).

Plaintiff filed this action seeking to recover the sum of $22,120.01 from defendant W.A. Bedsworth for loans made by plaintiff to Bedsworth. Plaintiff seeks to recover the sum of $18,165.32 from defendant Stotler and Company ("Stotler") based on Stotler's allowing the withdrawal of that sum of money from Bedsworth's account with Stotler even though plaintiff had a perfected security interest in that account, and after Stotler agreed to disburse no sums from that account other than to plaintiff. The plaintiff and defendant Bedsworth have agreed to settle following the trial of all issues between the plaintiff and Stotler.

Plaintiff alleges that it agreed to make certain loans to defendant Bedsworth for the purpose of feeding cattle and to provide margin money for Bedsworth's commodity accounts. Prior to advancing any funds, plaintiff required Bedsworth to execute a security agreement and assignment of hedging account on the commodity accounts he maintained with Stotler. Stotler acknowledged receipt of that document and represented to plaintiff in a letter that it would not allow any funds to be withdrawn from Bedsworth's commodity account unless those funds were forwarded directly to plaintiff. Plaintiff alleges that following the receipt of the letter from Stotler, it advanced monies to Bedsworth to margin the commodity accounts Bedsworth maintained with Stotler. Plaintiff alleges that it relied on Stotler's representation that Stotler would not allow funds to be withdrawn other than funds to be sent directly to plaintiff. From time to time, funds were withdrawn from the account and were sent

directly to plaintiff. In July 1988, Stotler allowed Bedsworth to withdraw the sum of $18,165.32 from the account. Stotler did not forward these funds to plaintiff. Instead, Bedsworth had been allowed to withdraw those funds for delivery to a different brokerage firm. The plaintiff bank had meanwhile called all Bedsworth's notes and liquidated all security. Bedsworth remained indebted to the plaintiff in the approximate amount of $22,000.00. The funds which were withdrawn from Bedsworth's account were unavailable to satisfy his obligations with the plaintiff bank. Pretrial Order, Doc. 49.

Defendant Stotler's motion for leave to file instanter amended affirmative defenses is, in essence, a motion to amend its answer. The defendant seeks to add the affirmative defense of lack of consideration. The plaintiff has objected to the motion on the grounds that it is untimely. The court shall deny the motion to amend, but for another reason.

■ Leave to amend pleadings "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Four factors which are relevant in deciding a motion for leave to amend are: (1) undue prejudice to the other party; (2) undue delay; (3) bad faith; and (4) futility of amendment. *Koch v. Koch Industries*, 127 F.R.D. 206, 209 (D.Kan. 1989). Untimeliness alone may be a sufficient basis for denial of leave to amend. *Las Vegas Ice and Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir.1990).

■ The motion to amend is untimely, having been filed several months after the cutoff for the filing of motions to add affirmative defenses. *See* Doc. 20 (scheduling order). The motion to amend should be denied, however, because of futility. Plaintiff's theories of recovery as set forth in the Pretrial Order are (1) detrimental reliance; (2) negligent performance of undertaking to render services by Stotler (Restatement (Second) of Torts § 323); and (3) conversion. Doc. 49, p. 7. As discussed below, the contract defense of lack of consideration is inapplicable to these three theories.

■ Plaintiff's first theory of recovery is detrimental reliance or promissory estoppel. Plaintiff's theory is that it relied to its detriment on Stotler's promise to forward funds only to plaintiff. Promissory estoppel is a doctrine which substitutes for consideration. *Mohr v. State Bank of Stanley*, 244 Kan. 555, 574, 770 P.2d 466 (1989). When proof of an express contract fails for a lack of consideration and when refusal to enforce a party's promise would be unjust because of reliance upon it, promissory estoppel is the appropriate theory of recovery. *Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F.Supp. 1154, 1167 (D.Kan. 1990). Lack of consideration is not a defense to a claim of promissory estoppel. Lack of consideration is, rather, a prerequisite to a promissory estoppel claim.

■ Plaintiff's second theory of recovery is negligent performance of undertaking to render services. This is a tort theory based on section 323 of the Second Restatement of Torts. That section provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

*Circle Land & Cattle Corp. v. Amoco Oil Co.*, 232 Kan. 482, 488, 657 P.2d 532 (1983) (quoting Restatement (Second) of Torts § 323 (1965)). The Kansas Supreme Court has recognized this cause of action, stating:

Section 323 is based upon the legal principle that *a valuable consideration is not a prerequisite to the existence of a duty to exercise due care.* The law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which an action lies.

*Id.* (emphasis added). Lack of consideration is not a valid defense to this cause of action.

 Plaintiff's third theory of recovery is conversion. Conversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another." *See Temmen v. Kent–Brown Chevrolet Co.*, 227 Kan. 45, 50, 605 P.2d 95 (1980). Conversion is a tort. *Id.* The contract defense of lack of consideration would appear to be completely inapplicable. Since the defense of lack of consideration is not a valid defense to the plaintiff's three theories of recovery, the proposed amendment to the answer would be futile. The motion to amend shall be denied.

Defendant's motion for leave to file instanter its motion for summary judgment is, in essence, a motion for leave to file its motion for summary judgment out of time. The motion for summary judgment was filed only a few days after the cutoff for dispositive motions. *See* Doc. 47. Plaintiff has not objected to the late filing. Defendant's motion to file its motion for summary judgment out of time shall be granted.

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim. Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials contained in the nonmoving party's pleadings, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513.

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of the finder of fact, not the functions of the judge when ruling on a motion for summary judgment. The evidence of the nonmoving party is to be believed. All justifiable inferences are to be drawn in favor of

the nonmovant. *Id.* at 255, 106 S.Ct. at 2513.

The following uncontroverted facts have been presented to the court.

1. Plaintiff Fidelity State Bank of Garden City, Kansas ("Fidelity") is a Kansas corporation existing under the laws of the State of Kansas with its principal place of business located in Garden City, Kansas. Defendant Stotler and Company ("Stotler") is an Illinois corporation existing under the laws of the State of Illinois with its principal place of business located in Chicago, Illinois.

2. On or about February 2, 1987, plaintiff Fidelity, defendant Bedsworth, and defendant Stotler entered into a three party agreement titled Security Agreement and Assignment of Hedging Account. Prior to entering into this agreement, defendant Bedsworth had separately arranged to borrow funds from Fidelity for the purpose of, among other things, satisfying margin calls in a commodity account Bedsworth maintained with Stotler. The purpose of entering into the Security Agreement and Assignment of Hedging Account by Fidelity was to secure loans made by Fidelity to Bedsworth insofar as the funds were utilized in connection with Bedsworth's hedge account at Stotler.

3. The Security Agreement and Assignment of Hedging Account provided in pertinent part:

2. The Broker [Stotler] is hereby authorized and directed to pay to the Secured Party [Fidelity] upon its demand all funds that may hereafter be withdrawable or payable out of said account of the Debtor [Bedsworth] with the Broker, and the Debtor agrees that he will not withdraw or attempt to withdraw any funds or other property from said account except as permitted by this Agreement. The Secured Party is hereby authorized and fully empowered without further authority from the Debtor to request the Broker to remit to the Secured Party any funds that may be due to the Debtor, and the Broker is hereby authorized and directed to pay to the Secured Party such sums it shall so request or demand without the consent of or notice to the Debtor. Absent specific instructions to the contrary, Broker may make disbursements directly to the Debtor without inquiry of or notice to Secured Party, and Broker is entitled to comply with any other instructions or requests of the Debtor.

. . . .

4. Nothing herein shall be construed so as to prevent the Debtor from remaining the owner, subject to the interest of the Secured Party as it may appear, of the account with the Broker. Until the Secured Party elects to the contrary and delivers notice of such election by telephone (with written confirmation being furnished within 48 hours) to the Broker, the Debtor may make such additional transactions, including withdrawal of funds, in his said account with the Broker as the Broker shall be willing to accept for execution....

. . . .

9. As between the Debtor and the Secured Party, this instrument shall remain in full force and effect until cancelled in writing by the Secured Party, or by the Debtor when and if the Debtor no longer is indebted to the Secured Party, the Secured Party being required to confirm in writing that this is in fact the case before said cancellation will take effect. Until said cancellation notice from the Secured Party is received by the Broker, this Security Agreement and Assignment of Hedging Account shall remain in full force and effect. Any cancellation of this instrument shall be without effect as to the Broker until the Broker is notified in writing by the Secured Party.

. . . .

13. Broker owes no duty to Secured Party to do or refrain from doing any act other than to follow specific instructions from the Secured Party as authorized by this Agreement. In all other respects, the operation and management of the Debtor's account will continue unmodified except as specifically indicated to the contrary by this Agreement.

4. On or about March 25, 1987, a letter was sent by Dorie Stage, Stotler's Director of Compliance, to Craig Wheeler, Vice President of Fidelity, regarding Bedsworth's Stotler account H8300–X3173. In pertinent part, the letter provided:

Stotler will hold this account subject to your security interest, and will send funds only to your institution, will send copies of all trading activities in this account to you, and will follow your authorized instructions.

We wish to advise you, however, that Stotler does not undertake to supervise the customer activities for your benefit to insure customer compliance with these terms of the agreement....

5. By telex received by Stotler on July 11, 1988, defendant Bedsworth requested that Stotler transfer all open positions and equity (cash) in his Stotler account to Barnes and Company, another futures commission merchant located in Chicago, Illinois. On July 12 and 13, 1988, Stotler honored Bedsworth's request to transfer the positions by virtue of the offset and transfer of open positions to Barnes and Company. On July 14, 1988, Stotler honored Bedsworth's request to transfer the funds (equity) by virtue of the tender of $18,165.32 to Barnes and Company.

6. Prior to Bedsworth's request to transfer all equity and open positions to Barnes and Company, Fidelity had not provided Stotler (as required by paragraph 4 of the Security Agreement and Assignment of Hedging Account) with a notice of its intent to the contrary, or more specifically, notification advising Stotler to prevent, prohibit, or not allow Bedsworth to withdraw funds directly from his Stotler account.

7. Subsequent to the transfer of Bedsworth's equity and positions to Barnes and Company, Fidelity honored a check drawn on Bedsworth's checking account maintained at Fidelity and made payable to Barnes and Company.

8. Fidelity received duplicate Combined Commodity Statement Confirmation and/or Purchase and Sale Statements (hereinafter "daily statements") for transactions effectuated in Bedsworth's account. Fidelity reviewed the daily statements upon receipt of the statements at the bank. The daily statements received by Fidelity arrived three to five business days following the date of the activity. The July 13 and 14, 1988 daily statements were received by Fidelity in the ordinary course of business.

9. No new or additional consideration was given by Fidelity to Stotler in exchange for the alleged additional duty, obligation, warranty, or representation which plaintiff claims Stotler agreed to undertake by virtue of Dorie Stage's correspondence dated March 25, 1988.

10. Prior to July 14, 1988, funds withdrawn from Bedsworth's Stotler account were made payable to and mailed directly to Fidelity.

The following additional facts are uncontroverted for the purpose of this memorandum and order based on Stotler's failure to reply to Fidelity's response brief.

11. Fidelity did not give any specific directions to Stotler not to allow Bedsworth to withdraw funds from the commodity account in question because of the letters received from Dorie Stage.

12. Fidelity understood Stotler to be undertaking an additional duty by virtue of the correspondence sent to them by Dorie Stage.

13. Fidelity did not give any specific written instructions to Stotler because it relied upon the affirmative representations contained in the letters from Dorie Stage.

14. The letters from Dorie Stage listed her title as Director of Compliance.

15. From the title "Director of Compliance," Fidelity believed that Dorie Stage had the authority to sign the letter and to issue the letter with those statements in it.

16. Fidelity assumed that Dorie Stage, in her capacity as Director of Compliance, would comply with the statements made in her correspondence. Fidelity relied on those statements.

17. Prior to July 14, 1988, whenever Bedsworth tried to withdraw funds from the commodity account the check was sent to Fidelity and made payable to Fidelity.

18. When cash was withdrawn from the account prior to July 14, 1988, the transaction was listed on the daily summary as a cash withdrawal.

19. The statement from Stotler dated July 14, 1988 gave no explanation as to the disposition of the $18,165.32 taken from the account.

20. It was not until after receipt of the letters from Dorie Stage that Fidelity agreed to advance any funds for Bedsworth to engage in commodity trading with Stotler.

21. Stotler made a mistake in disbursing the $18,165.32 for the benefit of Bedsworth and has acknowledged the mistake.

In its motion for summary judgment, defendant Stotler argues (1) that the terms of the contract involving plaintiff, Bedsworth, and Stotler mandate the entry of judgment in favor of Stotler; (2) that the letter from Stotler to plaintiff did not create or impose any additional duties upon Stotler; and (3) that an examination of relevant futures prices renders plaintiff's claim a nullity, since Stotler transferred a debit to Barnes and Company. Stotler makes this third argument notwithstanding the fact that Stotler tendered a check in the amount of $18,165.32 to Barnes and Company. Stotler noted in its brief that it was in the process of obtaining further supporting documentation to explain its position that the transfer of the check was merely a part of the transfer of an open trade debit account. Stotler noted that as soon as it received the additional documentation, it would move for leave to supplement its motion for summary judgment. Stotler has not done so, although it has had ample time. The court must conclude that this argument has proven to Stotler to be non-meritorious and that Stotler has abandoned it.

Under its contract arguments, Stotler argues that it was authorized under the contract to disburse funds directly to Bedsworth; that the March 25, 1987 letter did not modify the terms of the contract; that the author of the March 25, 1987 letter, Dorie Stage, lacked the authority to modify the terms of the contract; and that the alleged contract modification was not supported by any new consideration. Defendant has cited a total of one case in its brief. Defendant cites *State ex rel. Ludwick v. Bryant,* 237 Kan. 47, 697 P.2d 858 (1985) in support of its argument that the contract at issue was not modified because the alleged modification was not supported by consideration. This is a defense to a claim the plaintiff is not making. Plaintiff is not seeking to recover under a breach of contract theory. *See* Pretrial Order, Doc. 49 (theories of recovery). The court does not need to address the defendant's arguments further. The court is not required to construct arguments or theories for the defendant in the absence of any discussion of the issues. *See Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir. 1991).

Defendant has not shown that it is entitled to judgment as a matter of law on plaintiff's claims. The court notes that the defendant did not even mention, much less address by a discussion of uncontroverted fact and legal argument, plaintiff's claims for relief as contained in the Pretrial Order. Defendant's motion for summary judgment shall be denied.

IT IS BY THE COURT THEREFORE ORDERED that defendant Stotler's motion for leave to file instanter amended affirmative defenses (Doc. 56), which the court construes as a motion to amend answer, is hereby denied.

IT IS FURTHER ORDERED that defendant Stotler's motion for leave to file instanter its motion for summary judgment and memorandum in support (Doc. 50), which the court construes as a motion for leave to file out of time, is hereby granted.

IT IS FURTHER ORDERED that defendant Stotler's motion for summary judgment (Doc. 51) is hereby denied.