MONARCH NORMANDY SQUARE
PARTNERS, Plaintiff,

v.

NORMANDY SQUARE ASSOCIATES
LIMITED PARTNERSHIP, et al.,
Defendants.

NORMANDY SQUARE ASSOCIATES
LIMITED PARTNERSHIP, et al., Plaintiffs and Counterclaim Defendants,

v.

MONARCH NORMANDY SQUARE
PARTNERS, et al., Defendants
and Counterclaim Plaintiffs.

Civ. A. Nos. 88–1338–MLB, 88–1513–MLB.

United States District Court,
D. Kansas.

March 16, 1993.

See also 817 F.Supp. 896, 817 F.Supp. 908, 817 F.Supp. 919.

James A. Walker, Triplett, Woolf & Garretson, Wichita, KS, T. Barry Kingham, Curtis, Mallet–Prevost, Colt & Mosle, New York, NY, Warren Dennis, Proskauer, Rose, Hoetz & Mendelsohn, Washington, DC, Marc Marmaro, Jeffery, Mangels & Butler, Los Angeles, CA, for plaintiffs.

Terry L. Malone, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, for defendants.

J. Michael Kennalley, Hershberger, Patterson, Jones & Roth, Wichita, KS, for Helsley, Mulcahy & Fesler, defendant.

Philip L. Bowman, Adams, Jones, Robinson & Malone, Wichita, KS, for William C. Grieger, defendant.

Steven C. Kiser, pro se.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This case comes before the court on defendant Helsley, Mulcahy & Fesler's (HMF) motion to dismiss for lack of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2), improper venue, pursuant to Fed.R.Civ.P. 12(b)(3), and failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). (Doc. 312)

These consolidated actions arise from the sale of an apartment complex in Wichita, Kansas, in October, 1985. Monarch Norman-

dy Square Partnership (MNSP) sold the apartment complex to Richard Gleicher, who transferred the apartments to Normandy Square Associates Limited Partnership (NSALP).

HMF is an accounting firm organized as a California partnership. It is alleged to have performed accounting services for defendants Fenstermacher, Hoagland, Monarch Properties, Inc., Monarch Real Estate Co, Inc., Monarch Securities, Inc. and MNSP. The plaintiffs have made claims against HMF for fraud, negligent misrepresentation, civil conspiracy, and for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*

### 12(b)(2) Motion

 The plaintiffs bear the burden of establishing personal jurisdiction over HMF. *Johnson v. Goodyear S.A. Colmar Berg,* 716 F.Supp. 531, 532 (D.Kan.1989). For purposes of deciding a 12(b)(2) motion, the court resolves all factual disputes in favor of the plaintiffs. *Id.*

 The plaintiffs base their argument that the court has personal jurisdiction over HMF on the nationwide service of process requirement of RICO found at 18 U.S.C. § 1965(d). The statute provides:

All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

The above section has been construed as a nationwide service of process provision. *Dooley v. United Technologies Corp.,* 786 F.Supp. 65, 70 (D.D.C.1992) (Citations omitted). The majority of courts that have considered the scope of federal statutes that provide for nationwide service of process have held that a defendant need only have minimum contacts with the United States,

not the forum state itself. *Go–Video, Inc. v. Akai Electric Co., Ltd.,* 885 F.2d 1406, 1415 (9th Cir.1989); *Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671 (7th Cir.1987), *cert. denied* 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 700 (1988); *Haile v. Henderson National Bank,* 657 F.2d 816, 824–26 (6th Cir. 1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1450, 71 L.Ed.2d 663 (1982); *FTC v. Jim Walter Corp.,* 651 F.2d 251, 256 (5th Cir. 1981); *U.S. v. International Broth. of Teamsters,* 776 F.Supp. 144, 150 (S.D.N.Y.1991); *Omni Video Games, Inc. v. Wing Co., Ltd.,* 754 F.Supp. 261, 263 (D.R.I.1991); *US Telecom, Inc. v. Hubert,* 678 F.Supp. 1500, 1508 (D.Kan.1987) (O'Connor, J.); *Pioneer Properties, Inc. v. Martin,* 557 F.Supp. 1354, 1358, n. 6 (D.Kan.1983) (Crow, J.); *Contra Wichita Federal Savings and Loan Ass'n v. Landmark Group, Inc.,* 674 F.Supp. 321, 325 (D.Kan.1987) (Kelly, J.) (court holds that the defendant must have "minimum contacts" in the forum district itself rather than with the United States to allow the exercise of personal jurisdiction).

HMF, relying on *Wichita Federal Savings and Loan Ass'n, supra,* argues this court must analyze whether, under the Fifth Amendment's Due Process Clause, HMF has minimum contacts with Kansas. In the court's view, this analysis is unnecessary and misapprehends the nature of the due process inquiry. The liberty interest insured by the Fifth Amendment in these circumstances is that a defendant must have minimum contacts with the *United States,* not just Kansas. Contrary to the view expressed in *Wichita Federal Savings and Loan Ass'n,*[1] this court believes that nationwide service does confer personal jurisdiction in these circumstances.

The plaintiffs have alleged that HMF is a California partnership. This allegation is sufficient to confer personal jurisdiction under § 1965(d). HMF's motion to dismiss for lack of personal jurisdiction is denied.

---

**1.** *Wichita Federal Savings and Loan Ass'n* relied on *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) for its holding. *Insurance Corp. of Ireland* was a diversity case, and the court's discussion of personal jurisdiction depended upon the law of Pennsylvania [28 U.S.C. § 1652]. The due process limitations on

the court's authority in that case arose under the Fourteenth Amendment, not the Fifth Amendment. As Justice Powell pointed out in his concurring opinion, no contention was raised that there was any federal basis for the exercise of personal jurisdiction by the district court. *Id.* 456 U.S. at 711, 102 S.Ct. at 2108, 72 L.Ed.2d at 507 (Powell, J. concurring).

### 12(b)(3) Motion

 The plaintiffs have the burden to establish proper venue. *Shuman v. Computer Associates Intern., Inc.,* 762 F.Supp. 114, 115 (E.D.Pa.1991). As a general rule, venue must be proper as to each claim. *Beattie v. United States,* 756 F.2d 91, 100 (D.D.C. 1984);[2] *See Wilson v. Wilson–Cook Medical, Inc.,* 720 F.Supp. 533, 539–40 (M.D.N.C. 1989).

The plaintiffs argue that venue is proper under either the general venue statute, 28 U.S.C. § 1391(b),[3] or the RICO special venue statute, 18 U.S.C. § 1965. The court will address § 1391(b) first.

 The plaintiffs correctly point out that Congress amended § 1391(b) in the Judicial Improvements Act of 1990, Pub.L. No. 101–650, § 311, 104 Stat. 5114 (1990). The plaintiffs filed suit in April, 1988, prior to the amendments. Because the Judicial Improvements Act does not specify when the 1990 amendments to § 1391(b) take effect, the court must determine whether to apply the amendments to a case pending on the effective date of the Act, which was December 1, 1990.

In *Arnold v. Maynard,* 942 F.2d 761 (10th Cir.1991), the Tenth Circuit addressed this question in a footnote to its opinion. The court noted the conflicting lines of Supreme Court precedent regarding the retroactive application of newly enacted federal statutes where congressional intent is unclear. *Id.* at 762, n. 2. In *DeVargas v. Mason & Hanger–Silas Mason Co.,* 911 F.2d 1377, 1388 (10th Cir.1990), *cert. denied* 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991), the court elected to follow the presumption that a statute is to be given only prospective application unless a contrary legislative intent appears. However, *DeVargas* concerned a statute affecting substantive rights and liabilities. The court noted that a presumption in favor of

retroactive application usually applied to statutes dealing with procedure and jurisdiction. In light of its conclusion that venue was proper in the case before it under 28 U.S.C. § 1392(a), the court found it unnecessary to decide the retroactive effect of the § 1391(b) amendments. *Id.*

The court believes the *DeVargas* holding applies only to statutory amendments that affect substantive rights and liabilities. The amendments to § 1391(b) are procedural. Thus, the court will apply the amended version of § 1391(b) to pending cases. The version of § 1391(b) applicable to this case reads:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only if (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

The fraud, negligence, and civil conspiracy claims against HMF are set forth in paragraphs 14, 21, 22, 23, and 24 of the pretrial order. The plaintiffs' RICO claim against HMF is detailed in paragraphs 32 through 45 of the pretrial order. The plaintiffs allege HMF knowingly disseminated false financial statements which were provided to plaintiffs; failed to disclose to plaintiffs HMF's lack of independence; knew or recklessly failed to determine that two financial statements prepared by "the Monarch Group" were false; recklessly failed to require "the Monarch Group" and "Monarch Partners" to amend their financial statements; willfully decided to understate expenses, eliminate certain ex-

---

**2.** The *Beattie* court notes the focus of the rule is on the word *separate.* Where a case involves multiple claims that amount to only one cause of action, venue as to one claim will support adjudication of all claims. *See Beattie,* 756 F.2d at 100.

**3.** In their respective memorandums, the parties focus their arguments on 28 U.S.C. § 1391(a).

The court believes § 1391(a) is inapplicable to this case because jurisdiction is not founded only on diversity of citizenship. The plaintiffs' inclusion of a RICO claim gives this court federal question subject matter jurisdiction. *See* 28 U.S.C. § 1331. Accordingly, § 1391(b) is the applicable venue provision.

pense categories, overstate operating income and conceal contingent liabilities; furnished a false financial statement to defendant Hoagland; and prepared a false financial statement which defendant Rayl sent to New York Life, a mortgagee of the apartment complex in Wichita, to procure its consent to the sale. As for the RICO claim, the plaintiffs allege HMF failed to disclose to the purchasers of an apartment complex in Lenexa, Kansas, the use of concessions granted to tenants and falsely represented the amounts of rent being collected in the apartment complex. (¶¶ 33–35 of Pretrial Order)

■■■■ Section 1391(b)(1) is clearly inapplicable because not all defendants reside in the same state. As for (2), the plaintiffs have made no allegation in the pretrial order as to where any of the events or omissions underlying their claims against HMF occurred. Although the apartment complex whose sale precipitated this litigation is located in Kansas, HMF's acts or omissions did not occur within Kansas. HMF has submitted an affidavit stating that it never had any contact with the plaintiffs, and that all of the accounting services it provided to MNSP, the owners of the apartment complex, were performed entirely in the State of California. In their response, the plaintiffs do not contest any of the facts presented in the affidavit. In the absence of any showing by plaintiffs that substantial operative facts occurred within the District of Kansas, venue cannot be laid under (2). *Cf. Glickman v. United States*, 626 F.Supp. 171, 177 (S.D.N.Y.1985) (venue is proper where complaint alleged substantial operative facts occurring in New York).

The plaintiffs argue the second clause of (2) supports venue because the property that is the subject of the action, namely the apartment complex, is located in the District of Kansas. This argument misconceives the nature of this lawsuit. It is not a suit centering on any rights, title or interest in real property. Rather, it is a fraud and negligent mis-

representation case. Although the facts giving rise to plaintiffs' allegations flow from the sale of the apartment complex, the apartment complex itself is not the subject of the action. The "property" at issue is the money the defendants allegedly obtained as a result of their fraudulent conduct. The court rejects the notion that (2) applies whenever real property is tangentially involved in a dispute. The court finds that (2) does not support venue.

■■■■ Finally, (3) does not apply to this case because there are other judicial districts in which this case can be brought, namely, in the Central District of California.[4] Accordingly, venue cannot be laid in this district pursuant to § 1391.

■■■■ The venue provisions of RICO supplement the provisions of § 1391(b). *See Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d at 672. The plaintiffs do not make any reasoned argument that venue is proper under 18 U.S.C. § 1965(a), which provides:

Any civil action or proceeding under this chapter [18 U.S.C. § 1961 *et seq.*] against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

HMF is a California partnership, has never transacted any business in the District of Kansas, and has no agent in this District. Venue cannot be proper under § 1965(a).

Instead, plaintiffs base their argument on § 1965(b), which provides:

In any action under § 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

---

4. The court notes that the plaintiffs originally filed this lawsuit in the Central District of California, and the case was transferred to the District of Kansas, pursuant to 28 U.S.C. § 1404(a). A transfer under § 1404(a) can only be made where venue is proper in the transferee district.

15 Wright, Miller and Cooper, *Federal Practice and Procedure*, § 3845 at 341 (1986). However, at the time of the transfer, HMF was not a party to this action. HMF was only added as a defendant after the case was transferred to this district.

This section was intended to enable a plaintiff to bring before a single court for trial all members of a nationwide RICO conspiracy. *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). Despite the fact that venue would appear to be proper in the Central District of California, the court believes it would frustrate the orderly and expeditious disposition of this case to transfer it back to California. The case is nearly five years old. The docket sheet testifies to the fact that great time and effort has been expended by the litigants in pursuing their claims. This court has presided over this case for several years and has greater familiarity with the issues presented than would a California court. All parties have retained able local counsel. In these circumstances, the court concludes that the "ends of justice" make venue proper as to HMF under § 1965(b). *Southmark Prime Plus, L.P. v. Falzone*, 768 F.Supp. 487, 490–91 (D.Del.1991); *American Trade Partners v. A–1 Intern. Importing*, 755 F.Supp. 1292, 1304–05 (E.D.Pa.1990).

HMF's motion to dismiss for improper venue is denied.

### 12(b)(6) Motion

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept as true all material allegations in the complaint, and must construe the complaint in favor of the complaining party. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). The court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts to support the theory of recovery that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1148 (10th Cir.), *cert. denied* 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989).

### RICO Claims

RICO authorizes civil suits by "any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962." 18 U.S.C. § 1964(c). The plaintiffs allege that HMF violated 18 U.S.C. § 1962(c), which provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

In order to state a RICO claim against HMF under § 1962(c), the plaintiffs must prove (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.[5] *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

The plaintiffs have alleged that the Monarch Group,[6] Fenstermacher, Hoagland, Rayl, HMF, Grieger and Kiser constitute an "enterprise" within the meaning of § 1961(4).[7] (¶ 42 of Pretrial Order) MNSP, Fenstermacher, Hoagland, Rayl, BRMD,[8] Monarch Group, HMF, Grieger and Kiser are alleged to be employed by, or associated with the enterprise. (¶ 43 of Pretrial Order) MNSP, Fenstermacher, Hoagland, Rayl, BRMD, Monarch Group, HMF, Grieger and Kiser are alleged to have conducted and/or

---

**5.** The plaintiffs allege the defendants engaged in a pattern of racketeering activity, not the unlawful collection of a debt.

**6.** The plaintiffs allege the Monarch Group consists of MPI, MRE, and MSI. (p. 17 of Pretrial Order) The defendants have objected to this grouping of separate entities under the name "Monarch Group". (Doc. 338) For purposes of this motion, the court will treat all references to the Monarch Group as alleging conduct by all three defendants.

**7.** *18 U.S.C. § 1961(4) provides:*

"Enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

**8.** BRMD is a California partnership. It also serves as a general partner of MNSP.

participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity. (¶ 44 of Pretrial Order)

The Tenth Circuit has held that a "person" violating § 1962(c) must be distinct from the "enterprise". *Board of County Com'rs v. Liberty Group*, 965 F.2d 879, 885 (10th Cir.), *cert. denied* —— U.S. ——, 113 S.Ct. 329, 121 L.Ed.2d 247 (1992).[9] In the case at bar, HMF is alleged to be both a member of the "enterprise" and also a "person" conducting the pattern of racketeering activity. This is not possible under § 1962(c) because a "person" cannot be employed by or associated with an "enterprise" of which it is a member. *Id.; Raymark Industries, Inc. v. Stemple*, 714 F.Supp. 460, 472–73 (D.Kan. 1988).

The court also finds the plaintiffs cannot establish the pattern requirement. The court has addressed this requirement at some length in the course of dismissing the plaintiffs' RICO claims against the other defendants. To summarize our discussion, a plaintiff must show that the racketeering predicate acts are **related** and that they amount to or pose a threat of **continued** criminal activity. *H.J. Inc. v. Northwestern Bell*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). To establish **continuity,** a plaintiff must demonstrate either "a closed period of repeated conduct" or "past conduct that by its nature projects into the future with a threat of repetition." *Id.* **Close-ended** continuity requires "a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* **Open-ended** continuity requires a clear threat of future criminal conduct related to past criminal conduct. *Id.*

At oral argument, the plaintiffs informed the court that they alleged close-ended continuity. As the court discussed more fully in its other opinion, the relatively short duration of the alleged conduct out of which the predicate acts arise suggests the absence of

close ended continuity. *See Hughes v. Consol–Pennsylvania Coal Co.*, 945 F.2d 594, 610 (3rd Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 2300, 119 L.Ed.2d 224 (1992) (Citations omitted). Also, the court notes that the plaintiffs' allegations do not implicate any concern with long-term criminal conduct. *See Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1555–56 (10th Cir.1992).

The plaintiffs' RICO claim against HMF is dismissed with prejudice to repleading. In addition to the aforesaid defects, which cannot be cured, this case has been on file since 1988, has been pre-tried and is set for trial beginning March 30, 1993. *West Mountain Sales, Inc. v. Logan Mfg. Co.*, 718 F.Supp. 1084, 1087 (N.D.N.Y.1989) (RICO complaint dismissed with prejudice for failure to meet continuity requirement); *Havas v. Thornton*, 609 F.2d 372, 376 (9th Cir.1979).

### Fraud Claim

The plaintiffs have alleged fraud on the part of HMF. In order to state a claim for fraud, a party must allege an untrue statement of fact, known to be untrue by the party making it, which is made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to their injury and damage. *Albers v. Nelson*, 248 Kan. 575, 579, 809 P.2d 1194 (1991). The plaintiffs allege HMF prepared and transmitted false financial statements to New York Life on October 26, 1985, for the purpose of procuring New York Life's consent to the sale of NSA. The plaintiffs do not contend they ever received any financial statements from HMF prior to the sale of NSA.

Fraud is actionable only where a party is under a legal or equitable obligation to communicate and in respect of which it could not be innocently silent. *DuShane v. Union Nat'l Bank*, 223 Kan. 755, 759, 576 P.2d 674 (1978). As a general rule, this duty must arise from a relationship existing between the parties when the misrepresentation or concealment is alleged to have occurred. *Id.* at 760, 576 P.2d 674. If the

---

**9.** Eleven circuits have addressed this issue, and all but one have held that the "person" charged with the RICO violation must be distinct from the "enterprise" under § 1962(c). *Id.* at n. 4.

parties are contracting, the relationship arises when there are disparate bargaining powers or expertise. The obligation also arises where the parties are in a fiduciary relationship. *Id.* However, where a plaintiff and defendant are not bargaining with each other and the defendant obtains no advantage from misrepresenting or concealing information about a third party the law has generally absolved the defendant of liability unless it has made a statement which induced the plaintiff to act, knowing the statement was false or at least making it recklessly. *Id.* at 761, 576 P.2d 674 (citing *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931)).

In *Gillespie v. Seymour*, 14 Kan.App.2d 563, 796 P.2d 1060 (1990), the Kansas Court of Appeals addressed an analogous situation. In *Gillespie*, the beneficiaries of a trust brought suit against the accountants who did the tax and accounting work for the trust, alleging four causes of action, including fraud. The beneficiaries alleged that trust assets were invested in an oil and gas venture owned by the trustee and her immediate family, resulting in losses to the trust. According to the beneficiaries, the accountants committed fraud by failing to inform them that the trust funds were being misused when the accountants had a duty to speak. The court rejected this argument and affirmed the trial court's dismissal of the fraud claim, holding that the accountants had no legal obligation to communicate facts regarding the investment of the trust fund to the beneficiaries. *Id.* at 574, 796 P.2d 1060.

The court relied on two cases to arrive at its conclusion. In the first, *In re Gas Reclamation, Inc. Securities Litigation*, 659 F.Supp. 493 (S.D.N.Y.1987), the court dismissed a claim of common-law fraud against Peat Marwick, holding that Peat Marwick had no duty to disclose fraudulent misconduct on the part of the company the plaintiffs

invested in. *Id.* at 506. In the second, *Latigo Ventures v. Laventhol & Horwath*, 876 F.2d 1322 (7th Cir.1989), the court held that an accountant had no duty to broadcast fraud by a corporate client to persons who might buy the client's stock. *Id.* at 1327.

■ This court likewise holds that HMF owed the plaintiffs no duty. HMF did not have any contract with the plaintiffs. It did not form a fiduciary relationship with the plaintiffs. *Rajala v. Allied Corp.*, 919 F.2d 610, 615 (10th Cir.1990), *cert. denied* — U.S. —, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991). The misrepresentations of which the plaintiffs complain were made to a third party, not to the plaintiffs. HMF could not have expected, much less intended, that the statements it made to New York Life would be passed along to the plaintiffs. In fact, the plaintiffs did not even know of HMF's alleged misrepresentations until *after* the sale of NSA.[10]

The plaintiffs' fraud claim against HMF closely parallels the fraud claim made against Peat Marwick in *In re Gas Reclamation, Inc., supra.* Like the plaintiffs in that case, the plaintiffs in the case at bar argue that HMF has an affirmative duty to disclose misstatements it discovered in MNSP's financial statements. The plaintiffs' view is erroneous.

### Negligent Misrepresentation Claim

■ The plaintiffs have brought a claim a negligent misrepresentation against HMF. A plaintiff in a negligence case must establish (1) a duty of reasonable care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) damage to the plaintiff; and (4) a causal connection between the duty breached and the damage sustained. *Hammig v. Ford*, 246 Kan. 70, 73, 785 P.2d 977 (1990). The absence of a duty dooms the plaintiffs' claim.[11]

No person, proprietorship, partnership, professional corporation or association authorized to practice as a certified public accountant pursuant to article 3 of chapter 1 of the Kansas Statutes Annotated, or any employee, agent, partner, officer, shareholder or member thereof, shall be liable to any person or entity for civil damages resulting from acts, omissions,

---

**10.** Not only did HMF owe no duty to the plaintiffs, but it is inconceivable the plaintiffs could have relied on any misrepresentations HMF may have made to New York Life.

**11.** Even if HMF owed the plaintiffs a duty, plaintiffs' negligence claim would be barred by K.S.A. 1–402, which provides:

### Conspiracy Claim

 The plaintiffs allege HMF conspired with the other defendants to defraud the plaintiffs. The elements of a civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or cause of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678 P.2d 153 (1984). A civil conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy. *Id.* In light of the court's dismissal of plaintiffs' RICO, fraud, and negligent misrepresentation claims against HMF, the plaintiffs's civil conspiracy claim must fail as a matter of law.

The court holds that plaintiffs fail to state a cause of action for violations of RICO, fraud, negligent misrepresentation or civil conspiracy against HMF. HMF"s motion (Doc. 312) to dismiss is hereby granted. The fraud and negligent misrepresentation claims are likewise dismissed with prejudice to repleading for the same reasons as the RICO claim and additionally because the court is satisfied that plaintiffs can never allege a set of facts which would allow them to stand in the shoes of New York Life, thereby arguably entitling them to relief against HMF.

IT IS SO ORDERED.

decisions or other conduct amounting to negligence in the rendition of professional accounting services unless:

(a) The plaintiff directly engaged such person, proprietorship, partnership, corporation or association to perform the professional accounting services; or

(b)(1) the defendant knew at the time of the engagement or the defendant and the client mutually agreed after the time of the engagement that the professional accounting services rendered the client would be made available to the plaintiff, who was identified in writing to the defendant; and (2) the defendant knew that the plaintiff intended to rely upon the professional accounting services rendered the client in connection with specified transactions described in writing.