**Zena D. CRENSHAW, Plaintiff,**

v.

**Joan S. ANTOKOL et al., Defendants.**

**Civil Action No. 02–2215 (RMU).**

United States District Court, District of Columbia.

Oct. 20, 2003.

Zena D. Crenshaw, Pro Se.

Paul J. Maloney, Carr Maloney, P.C., Washington, DC, for defendants Antokol, Cohen, Gallivant, Hodgson, Ice miller Donadio & Ryan, Hoffmann-LaRoche, McMurray, Wooden and Wooden & McLaughlin.

Robert F. Parker, Burke Costanza & Cuppy, LLP, Merrillville, IN, pro se.

Anthony R. Picarello, Jr., Washington, DC, for defendants Rehana Adat, Spangler Jennings & Dougherty.

Barry Coburn, Lisa A. Fishberg, Coburn & Schertler, Washington, DC, for defendant Bank One Trust Co.

Francis J. Gorman, Gorman R. Williams, Baltimore, MD, for defendant Martin.

Robert F. Parker, Pro Se.

### *MEMORANDUM OPINION*

URBINA, District Judge.

#### Transferring the Action to the Northern District of Indiana

### I.  INTRODUCTION

*Pro se*[1] plaintiff Zena Crenshaw ("the plaintiff") brings this action alleging viola-

---

**1.** Although the plaintiff is *pro se,* she is an attorney.

tions of federal civil conspiracy and civil rights statutes by 15 defendants: Spangler, Jennings & Dougherty P.C. ("Spangler") and Rehana Adat (collectively, "the Spangler defendants"); Joan Antokol, Ralph Cohen, Bonnie Gallivan, Anita Hodgson, Ice Miller Donadio & Ryan ("Ice Miller"), Hoffman–LaRoche, Inc. ("Hoffman–LaRoche"), Julie McMurray, William Wooden and Wooden & McLaughlin (collectively, "the lawyer defendants"); James Martin; Mary Paschen; and Bank One Trust Company, N.A. ("Bank One"). In response, several defendants filed motions to dismiss claiming, *inter alia*, improper venue. Because venue is not proper in the District of Columbia and the interest of justice favors transfer, the court transfers this action to the Northern District of Indiana.

## II. BACKGROUND

### A. Factual Background

The plaintiff is an African–American woman who was admitted to the practice of law in Indiana. Compl. ¶ 1. As the court noted in its previous memorandum opinion, the plaintiff's 85-page complaint outlines a complicated series of interlocking events and lawsuits. *Crenshaw v. Antokol*, 238 F.Supp.2d 107, 108–09 (D.D.C. 2002). These events fall into two categories: those relating to a state products-liability suit and those relating to the management of the plaintiff's mother's estate.

### 1. The Sanchez Litigation

In 1993, on behalf of minor client Sylvia Sanchez, the plaintiff brought suit in Indiana state court against drug manufacturer Hoffmann–LaRoche, two doctors, and a pharmacy and another individual. Compl. ¶ 2. The *Sanchez* complaint alleged a civil conspiracy that resulted in injury to the plaintiff's client from an adverse drug reaction. *Id.* ¶¶ 3, 16–19, 26. Represent-

ing Hoffman–LaRoche in this litigation were defendants Cohen, Gallivan, and Hodgson of Ice Miller, assisted by Hoffman–LaRoche in-house counsel defendants McMurray and Antokol. *Id.* ¶¶ 6, 27–29. Defendant Spangler represented the pharmacy and the individual. *Id.* ¶ 5.

The trial judge granted Hoffman–LaRoche's motion to dismiss. *Id.* ¶¶ 20, 22. Subsequently, the plaintiff successfully moved to amend her client's complaint. *Id.* ¶¶ 23–25. After some discussion between the plaintiff and defendant Hodgson, Hoffmann–LaRoche moved to dismiss the plaintiff's amended complaint and requested attorney's fees based on the plaintiff's "frivolous" action. *Id.* ¶¶ 36, 39–49, 50, 77. The trial judge again granted Hoffmann–LaRoche's motion to dismiss but reserved ruling on attorney's fees until the plaintiff's appeal of the dismissal was resolved. *Id.* ¶¶ 73, 77. The state court of appeals affirmed the trial judge's dismissal, and the Indiana Supreme Court refused review. *Id.* ¶¶ 79, 85, 89, 94. Hoffman–LaRoche promptly renewed its request for attorney's fees, which the trial judge granted in 1997. *Id.* ¶¶ 95, 104, 131–35. The state court of appeals later reversed the trial judge on the issue of attorney's fees, however, with the Indiana Supreme Court again declining review. *Id.* ¶¶ 136, 140.

Not satisfied with the state appellate process, the plaintiff took two additional steps. *Id.* ¶ 141. First, she filed a complaint in state court (later removed to federal court) against the *Sanchez* trial judge and defendant Hodgson alleging violations of the United States Constitution, federal civil rights law, state conspiracy and declaratory judgment law. *Id.* ¶ 233; *see Crenshaw v. Dywan*, 34 F.Supp.2d 707 (N.D.Ind.1999). Defendant Wooden & McLaughlin represented defendant Hodgson in this proceeding. Compl. ¶ 317.

The federal judge presiding over the case recused himself in the interests of justice after the plaintiff, citing alleged improper conduct by that judge in a previous case, twice moved to disqualify him. *Id.* ¶¶ 234–35; *see Crenshaw v. Hodgson*, 24 Fed. Appx. 619, 620 (7th Cir. Dec. 20, 2001). Because the federal judge found her allegations to be categorically false, however, he referred the matter to the Disciplinary Commission for the Supreme Court of Indiana ("the Commission"). Compl. ¶ 234.

Second, the plaintiff met with several African American attorneys in Lake County, Indiana and concluded that her treatment by the *Sanchez* trial judge was typical for minority attorneys prosecuting complex personal injury claims. *Id.* ¶¶ 142–43. At a June 1997 press conference held by a coalition of politicians, activists, churches, and citizens, she stated that the trial judge had taken action against her based on her race, and announced that she would be forwarding charges to the Indiana civil rights and judicial qualifications commissions—a step she took within a few days. *Id.* ¶¶ 143–45, 160. In response to a query from the judicial qualifications commission, the plaintiff wrote a letter stating that the *Sanchez* trial judge's ruling was consistent with the pattern of bias emanating from the state's courts of general jurisdiction. *Id.* ¶¶ 162–63. The plaintiff later sent a copy of the letter to the state civil rights commission and circulated the letter among members of the primarily African–American James Kimbrough Bar Association and the Lake County Bar Association ("LCBA"). *Id.* ¶¶ 164–66.

Within a few weeks, both the judicial qualifications commission and the civil rights commission dismissed the matter. *Id.* ¶¶ 168–69. Shortly thereafter, the LCBA board considered but eventually decided against filing a disciplinary complaint against the plaintiff. *Id.* ¶¶ 170–74. Notwithstanding the LCBA board's decision, in December 1997 LCBA member Robert F. Parker filed a grievance with the Commission against the plaintiff. *Id.* ¶¶ 176–77, 190.

### 2. The Estate of Nina M. Crenshaw

Nina M. Crenshaw, mother to the plaintiff, passed away in January 1996. *Id.* ¶ 203. Defendant Bank One served as the personal representative of her estate ("the Crenshaw estate"). *Id.* ¶ 282; Def. Martin's Mot. to Dismiss ("Def. Martin's Mot.") at 2. In October 1996, defendant Martin became the attorney for Bank One. Compl. ¶ 199; Def. Martin's Mot. at 2. In May 1997, the plaintiff received notice that the former personal representative of the estate had filed a grievance questioning the plaintiff's use of certain cash assets of the estate. Compl. ¶¶ 193, 196. Defendant Martin petitioned the plaintiff for authority to hire an attorney to recover certain estate assets from the plaintiff, but the plaintiff refused. *Id.* ¶¶ 199–200, 204.

In July 1997, after receiving a copy of the Martin petition, the Commission subpoenaed the plaintiff for information about the estate. *Id.* ¶ 202. Believing that she was facing heightened Commission scrutiny prompted by her charges against *Sanchez* trial judge, the plaintiff "forwarded a complaint" to the United States District Court for the Southern District of Indiana.[2] *Id.* ¶¶ 210–11. In April 1999, after the plaintiff failed to furnish the subpoenaed documents, the Commission suspended the plaintiff from the practice of law. *Id.* ¶¶ 213–14, 245. Two years later, in May 2001, the Commission dismissed the grievance stemming from the Cren-

---

2. It is not clear from the complaint whether the plaintiff formally initiated a lawsuit.

shaw estate for lack of reasonable cause for misconduct. *Id.* ¶ 227.

In August 2001, defendant Paschen, a Bank One assistant vice president, petitioned the state probate court to allow Bank One to resign as the personal representative of the Crenshaw estate. Def. Martin's Mot. Ex. A. Bank One argued that its resignation was in the estate's best interest given that the plaintiff had filed a civil complaint against Bank One regarding its administration of the Crenshaw estate. *Id.* at 2 & Ex. A. Despite the plaintiff's objections, the court approved the petition in November 2001. *Id.;* Compl. ¶ 289. Representing Bank One in various suits brought by the plaintiff concerning the Crenshaw estate were defendant Martin and defendant Adat, an attorney at Spangler. Spangler Defs.' Mot. to Dismiss ("Spangler Defs.' Mot.") at 1; *see also* Compl. ¶¶ 290–309 (discussing subsequent lawsuits).

## B. Procedural History

On November 8, 2002, the plaintiff filed a complaint in this court against the 15 above-referenced defendants, as well as nine members and the executive director of the Commission (collectively, "the Commission defendants"). Compl. at 1. In her complaint, the plaintiff alleges that the defendants violated the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961 *et seq.,* the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the First Amendment to the Constitution. *Id.* ¶¶ 2, 79, 81. The plaintiff also filed a motion for a temporary restraining order and preliminary injunction against the Commission defendants to prevent them from proceeding with certain disciplinary actions against her. Pl.'s Mot. for T.R.O. at 1, 3–4; Pl.'s Mot. for Prelim. Inj. at 1–2. On November 20, 2002, concluding that the plaintiff had failed to demonstrate a substantial likelihood of success on the merits given that venue was uncertain, the court denied both the temporary restraining order and the preliminary injunction. *Crenshaw,* 238 F.Supp.2d. at 112–14. Subsequently, the plaintiff voluntarily dismissed her claims against the Commission defendants. Pl.'s Notice of Voluntary Dismissal.

On December 9, 2002, defendant Martin filed a motion to dismiss for lack of personal jurisdiction, improper venue, failure to state a claim on which relief may be granted, and a failure to plead concisely. On January 8, 2003, the lawyer defendants filed a motion to dismiss alleging lack of personal jurisdiction, improper venue, failure to state a claim on which relief may be granted, *forum non conveniens,* and insufficiency of service of process. On January 22, 2003, at the plaintiff's request, the Clerk of the Court entered default against defendant Bank One. On February 4, 2003, the Spangler defendants filed a motion to dismiss for lack of personal jurisdiction, improper venue, failure to state a claim on which relief may be granted, and failure to plead concisely. On August 18, 2003, defendant Bank One filed a consent motion to vacate the entry of default. The court now turns to the defendants' motions.

## III. ANALYSIS

### A. Legal Standard for Venue Under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965

When federal jurisdiction is premised on a federal question, 28 U.S.C. § 1391(b) establishes venue as proper in:

(1) a judicial district where any defendant resides, if all the defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situ-

ated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

In addition to section 1391(b), 18 U.S.C. § 1965 sets forth a special two-part venue provision for RICO claims. Under section 1965(a), a plaintiff may bring a civil RICO action in federal district court for any district in which the defendant "resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). In addition, section 1965(b) provides that if the court finds that "the ends of justice [so] require," venue also is proper for other parties in the case notwithstanding their failure to meet the requirements of section 1965(a). 18 U.S.C. § 1965(b); *Mylan Labs., Inc. v. Akzo, N.V.*, 1990 WL 58466, at *10 (D.D.C. Mar.27, 1990) (noting that section 1965(b) "operates as a waiver of applicable venue requirements"). By invoking the "ends of justice" pursuant to section 1965(b), "a plaintiff [may] bring before a single court for trial all members of a nationwide RICO conspiracy." *Monarch Normandy Square Partners v. Normandy Square Assocs. Ltd. P'ship*, 817 F.Supp. 899, 905 (D.Kan.1993).

■ In undertaking the "ends of justice" analysis, courts consider a variety of factors. First, courts take into account the location of the parties, witnesses, records, and acts or omissions giving rising to the claims. *E.g., Lescs v. Martinsburg Police Dep't*, 2002 WL 215511, at *7 (D.D.C. Jan.28, 2002); *Welch Foods, Inc. v. Packer*, 1994 WL 665399, at *4 (W.D.N.Y. Nov.22, 1994). Courts also evaluate whether judicial economy favors trying the action in one court. *E.g., Southmark Prime Plus, L.P. v. Falzone*, 768 F.Supp. 487, 492 (D.Del.1991); *Farmers Bank of State of Del. v. Bell Mortgage Corp.*, 577 F.Supp. 34, 35 (D.Del.1978). In

addition, courts determine whether section 1965(b) venue would promote the orderly and expeditious disposition of the case. *E.g., Monarch*, 817 F.Supp. 899. Finally, courts consider whether there exists an alternative forum where venue is proper. *E.g., Sadighi v. Daghighfekr*, 36 F.Supp.2d 267, 277 (D.S.C.1999); *Eastman v. Initial Invs., Inc.*, 827 F.Supp. 336, 338–39 (E.D.Pa.1993).

**B. Legal Standard for Transfer Under 28 U.S.C. 1406(a) for Improper Venue**

■ If venue is improper, a court may, in the interest of justice, transfer a case to any other district "in which [the case] could have been brought." 28 U.S.C. § 1406(a). "A court may transfer a case to another district even though it lacks personal jurisdiction over the defendants." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C.Cir.1983) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)); *Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F.Supp. 46, 50 (D.D.C.1994). To transfer the action, the court must ensure as a preliminary matter that venue is proper and that the defendants are subject to personal jurisdiction in the transferee forum. *Sharp Elecs. Corp. v. Hayman Cash Register Co.*, 655 F.2d 1228, 1230 (D.C.Cir. 1981) (per curiam); *Crisler v. Schmeltzer*, 1990 WL 113887, at *2 (D.D.C. July 24, 1990). The decision regarding transfer the action rests within the court's sound discretion. *Naartex*, 722 F.2d at 789. The D.C. Circuit favors transfer under section 1406(a) "when procedural obstacles [such as lack of personal jurisdiction, improper venue, and statute-of-limitation bars] impede an expeditious and orderly adjudication on the merits." *Sinclair v. Kleindienst*, 711 F.2d 291, 293–94 (D.C.Cir.1983). Moreover, "[i]t is in the

interest of justice to transfer the entire complaint rather than have it heard in two different venues." *In re O'Leska,* 2000 WL 1946653, at *1 (D.C.Cir. Dec.7, 2000) (per curiam).

## C. The Court Concludes Venue Is Improper in the District of Columbia and Transfers the Action to the Northern District of Indiana[3]

In asserting that venue is proper in the District of Columbia ("the District"), the plaintiff offers one morsel of evidence: the fact that defendants Hoffman–LaRoche and Ice Miller maintain offices here. Compl. at 1–2. Relying heavily on section 1965, the plaintiff asserts that because defendants Hoffman–LaRoche and Ice Miller may be found in the District, the ends of justice merit extension of venue to the remaining defendants. Pl.'s Opp'n (Lawyer Defs.) at 2; Pl.'s Opp'n (Def.Martin) at 1. In support of her argument, the plaintiff emphasizes the deference owed to a plaintiff's choice of forum, and argues that the federal courts in Indiana are not adequate fora because of a strong possibility of judicial bias against her.[4] Pl.'s Opp'n (Lawyer Defs.) at 3–5; Pl.'s Opp'n (Def.Martin) at 2–3; Pl.'s Opp'n (Spangler Defs.) at 1–4.

The Spangler defendants, the lawyer defendants, and defendant Martin respond by stating flatly that venue is improper in the District. Spangler Defs.' Mot. at 3; Lawyer Defs.' Mot. to Dismiss ("Lawyer Defs.' Mot.") at 9–12; Def. Martin's Mot. at 6. First, they note that none of the events giving rise to the plaintiff's claims occurred in the District. Spangler Defs.' Mot. at 3; Lawyer Defs.' Mot. at 11; Def. Martin's Mot. at 6. Second, they point out that all but two of the defendants do not reside or practice in the District. Spangler Defs.' Mot. at 3 (stating that the Spangler defendants reside and have their principal place of business in Indiana); Lawyer Defs.' Mot. at 11 (noting that although Ice Miller and Hoffman–LaRoche have offices here, neither those offices nor the individual Ice Miller defendants were involved in the events giving rise to the complaint); Def. Martin's Mot. at 6 (indicating that defendant Martin resides and maintains a law practice in Indiana). The Spangler defendants and defendant Martin also note that the plaintiff resides and practiced law in Indiana. Spangler Defs.' Mot. at 3; Def. Martin's Mot. at 6. For these reasons, the Spangler defendants, the lawyer defendants, and defendant

**3.** Generally, a court should decide questions of personal jurisdiction before questions of venue. *Cameron v. Thornburgh,* 983 F.2d 253, 257 n. 3 (D.C.Cir.1993) (citing *Leroy v. Great W. United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979)). Where sound prudential justification exists, however, "a court [may] reject a case for improper venue without deciding the question of personal jurisdiction." *Id.* Accordingly, because the venue question "provides an easier resolution of the case," the court focuses first on the threshold question of venue. *Id.*

**4.** Specifically, the plaintiff alleges that [t]he events culminating with this case directly implicate both judges and one of two magistrates sitting for the U.S. District Court for the Northern District of Indiana at Hammond in Lake County. The former chief judge of all district courts for the northern district of Indiana suspended the plaintiff ... The former chief judge of all district courts for the southern district of Indiana did likewise. Three of five judges for the U.S. District Court for the Southern District of Indiana at Indianapolis are directly involved with this case. Those three included the former and present chief judge for all district courts for the southern district of Indiana.

Pl.'s Opp'n (Lawyers Defs.) at 3 n. 2; *see also* Pl.'s Opp'n (Def.Martin) Aff. at 2–7 (listing eight cases that the plaintiff initiated in both state and federal court against various state courts, commission officials, and some of the instant defendants).

Martin assert that the ends of justice do not support venue in the District. Spangler Defs.' Mot. at 3; Lawyer Defs.' Mot. at 10–12; Def. Martin's Reply at 2–5.

■ The court concludes that venue in the District is improper under both section 1391(b) and section 1965. Under section 1391(b), venue does not lie in the District, as all of the defendants reside in Indiana, all of the events giving rise to the plaintiff's claim took place in Indiana, and the plaintiff could have brought the action in Indiana. 28 U.S.C. § 1391(b). As for section 1965, although defendants Ice Miller and Hoffman–LaRoche transact affairs in the District, the ends of justice do not favor extending venue to all defendants. 18 U.S.C. § 1965; *Mylan Labs.*, 1990 WL 58466, at *10. The vast majority of the defendants have no ties whatsoever to the District and none of the events in dispute took place here. *Accord Lescs*, 2002 WL 215511, at *7 (declining to find section 1965(b) venue proper when the majority of witnesses, records, and alleged acts or omissions took place in another jurisdiction); *Welch Foods*, 1994 WL 665399, at *4 (concluding there was no section 1965(b) venue when all of the defendants and most of the witnesses were located in another jurisdiction). In addition, venue in the District would not promote the expeditious disposition of the case, which remains at the preliminary stages of litigation. *Cf. Monarch*, 817 F.Supp. 899 (concluding that section 1965(b) venue was proper given that the court had presided over the case for several years and the parties had local counsel who expended great time and effort pursuing the claims). Moreover, alternate fora exist: the plaintiff could have brought her entire action in Indiana, thereby also promoting judicial economy.

*Sadighi*, 36 F.Supp.2d at 277 (denying section 1965(b) venue in light of Florida's availability as an alternative forum); *Eastman*, 827 F.Supp. at 338–39 (declining to exercise section 1965(b) venue given that venue clearly was proper as to every defendant in Texas); *cf. Southmark*, 768 F.Supp. at 492 (finding section 1965(b) venue in part because it would be a "serious waste of judicial resources" to litigate the plaintiffs' RICO and conspiracy claims in more than one district).

Although courts have not considered judicial bias in conducting ends-of-justice analyses, the court would be remiss if it did not address the plaintiff's claims on that point. It is true that over the past few years, the plaintiff has generously availed herself of the state and federal judicial systems in Indiana, apparently without success. *See, e.g.,* Pl.'s Opp'n (Def.Martin) Aff. at 2–7 (listing various cases that the plaintiff initiated in state and federal court). It is well-settled, however, that "[a] judge's legal decisions are almost never grounds for a claim of bias or impartiality." *Jones v. Blake Constr. Co.*, 2003 WL 1873840, at *1 (D.C.Cir. Apr.14, 2003) (per curiam) (citing *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)). To the extent that the plaintiff has concerns that a judge has demonstrated "such a high degree of favoritism or antagonism as to make fair judgment impossible," she may move for recusal pursuant to the statutes governing recusal for judicial bias.[5] *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147; *see* 28 U.S.C. §§ 144 (directing a district judge to recuse himself upon receipt of a sufficient affidavit alleging personal bias or prejudice), 455 (directing any federal judge to disqualify himself in any case where his impartiality

---

**5.** In fact, the plaintiff has demonstrated that she understands how to raise concerns about judicial bias. *E.g., Dywan*, 34 F.Supp.2d at

709 (noting that "Crenshaw claims [the *Sanchez* trial judge] should be disqualified from this case based on 28 U.S.C. section 455").

might reasonably be questioned or where he has a personal bias or prejudice). Accordingly, because avenues for relief are available to address concerns of judicial bias, the court concludes that the ends of justice do not require that venue be proper in the District. 18 U.S.C. § 1965(b); *Mylan Labs.*, 1990 WL 58466, at *10.

Rather than grant the pending motions to dismiss, however, the court determines that the interest of justice favors the transfer of this action to the Northern District of Indiana. 28 U.S.C. § 1406(a); *Naartex*, 722 F.2d at 789. First, lack of venue should not bar resolution of the plaintiff's claims on the merits. *Sinclair*, 711 F.2d at 294. Second, it is clear that venue would be proper and the defendants would be subject to personal jurisdiction in the Northern District of Indiana because all of the defendants reside in Indiana, and all of the events underlying the plaintiff's claims took place there. *Sharp Elecs. Corp.*, 655 F.2d at 1230; *Crisler*, 1990 WL 113887, at *2.; 28 U.S.C. § 1391(b)(1)-(2); 18 U.S.C. § 1965(a). Finally, allowing the entire complaint to be heard in one venue promotes judicial economy. *In re O'Leska*, 2000 WL 1946653, at *1. In sum, because transfer serves the interest of justice, and requirements of venue and personal jurisdiction are met, the court transfers the action to the Northern District of Indiana. 28 U.S.C. § 1406(a); *Naartex*, 722 F.2d at 789; *Sharp Elecs. Corp.*, 655 F.2d at 1230.

## IV. CONCLUSION

For the foregoing reasons, the court transfers this action to the Northern District of Indiana this 20th day of October, 2003.[6] An order consistent with this Mem-orandum Opinion was separately issued the 30th day of September, 2003.

---

6. Because venue is not proper in the District of Columbia, the court must leave the resolution of the pending motions to the sound discretion of its sister court in the Northern District of Indiana.